**Karen DiIENNO, Plaintiff,**

v.

**LIBBEY GLASS DIVISION, OWENS–ILLINOIS, INC., an Ohio corporation, Marstan Industries, Inc., a Pennsylvania corporation, and the Freshie Company, a Pennsylvania corporation, Defendants.**

Civ. A. No. 85–703–JLL.

United States District Court,
D. Delaware.

Aug. 21, 1987.

Louis P. Agostini, Jr., of Agostini, Levitsky and Agostini, Wilmington, Del., for plaintiff.

Walter L. Pepperman II and Palmer L. Whisenant of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant Libbey Glass Div., Owens-Illinois, Inc.

Richard W. Pell and Anne L. Naczi of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant Marstan Industries, Inc.

Mary E. Sherlock of Young & Sherlock, Dover, Del., for defendant The Freshie Co.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

Plaintiff Karen DiIenno ("DiIenno") instituted this diversity action[1] against defendants Libbey Glass Division of Owens-Illinois, Inc. ("Owens-Illinois"), Marstan Industries, Inc. ("Marstan"), and The Freshie Company ("Freshie") to recover $90,000 in damages for injuries she sustained to her right hand when an allegedly defective jar, manufactured by Owens-Illinois, distributed by Marstan, and sold to DiIenno by Freshie shattered as she attempted to replace its lid. (Docket Item ["D.I."] 1.) Presently before the Court are motions for summary judgment from all three defendants. (D.I. 73; 96; 97.) The sole dispute between the parties is whether sufficient evidence exists in the record from which a jury could reasonably infer that the jar was defective at the time DiIenno purchased it. Because the Court finds there is no evidence from which a jury could reach that conclusion, the defendants' motions for summary judgment will be granted.

## FACTS PERTAINING TO THESE MOTIONS

The facts of this case are relatively straightforward and to a great extent undisputed.

On December 13, 1983, DiIenno purchased a glass jar filled with peanuts from the Rainbow's End, a small snack shop operated by Freshie. (D.I. 88 at 10–11.) The jar was a "30 ounce bean pot" with a cork lid, manufactured by Owens-Illinois for use as a decorative container. (D.I. 104 at A–1 to A–4.) Freshie purchased twelve of these jars from Owens-Illinois, in March of 1983, through the distributor Marstan. (D.I. 104 at A–12.) Freshie decided to fill

these jars with candy and peanuts and sell them as Christmas gifts. (D.I. 94 at 19.) Upon receiving the jars, Freshie washed them in a dishwasher, filled them with peanuts and candy, and placed them on shelves in the Rainbow's End for customers to view and purchase. (*Id.* at 21–22.)

After purchasing one of these jars, DiIenno returned to her place of employment, Blue Cross and Blue Shield of Delaware, and placed the jar on a shelf beside her desk. (D.I. 88 at 17.) Over the next six days, DiIenno opened and closed the jar approximately twice a day to remove peanuts. (*Id.* at 21.) DiIenno's co-workers also removed peanuts from the jar during this period (D.I. 86 at 18), apparently without DiIenno's knowledge or consent. (D.I. 88 at 20.) The jar remained on the shelf by DiIenno's desk the entire six-day period, including nights and one weekend when DiIenno was not in the office. (*Id.* at 18–19.)

On Monday, December 19, 1983, DiIenno once again opened the jar and removed some peanuts. After placing the peanuts on a napkin on her desk, DiIenno attempted to close the jar, but was unable on her first try to secure the cork lid tightly on the jar. (D.I. 88 at 29.) On her second attempt to secure the lid, the top portion of the jar shattered and DiIenno cut her wrist on the now jagged bottom portion of the jar. (*Id.*)

## ANALYSIS

DiIenno's complaint originally contained five counts. (D.I. 1.) Count four, a strict liability claim against Freshie, was subsequently dismissed with prejudice by DiIenno. (D.I. 63.) Of the counts that remain, counts one through three are strict liability claims against Owens-Illinois, under the laws of Pennsylvania and Ohio, and Marstan, under the law of Pennsylvania. (D.I. 1.) The Court will grant defendants Owens-Illinois' and Marstan's motions for summary judgment as to counts one through three since, as DiIenno now concedes (D.I. 104 at 3), the law of Delaware

---

**1.** Jurisdiction is proper in this Court by virtue of 28 U.S.C. § 1332 (1966 & Supp.1987) since the plaintiff and all of the defendants are citizens of different states and the amount plaintiff seeks is over $10,000. (D.I. 1.)

applies to this case,[2] and Delaware does not recognize the doctrine of strict products liability in cases involving the sale of goods. *Johnson v. Hockessin Tractor Inc.*, 420 A.2d 154, 156 (Del.Supr.1980); *Cline v. Prowler Inds. of Maryland, Inc.*, 418 A.2d 968, 980 (Del.Supr.1980).

In *Cline*, the Delaware Supreme Court held for the first time that the judicially created doctrine of strict products liability has been preempted in Delaware, with respect to cases involving the sale of defective goods, by the Delaware General Assembly's adoption of the warranty provisions of the Uniform Commercial Code ("UCC").[3] *Cline*, 418 A.2d at 980. After a thorough review of the similarity of coverage of the UCC warranty provisions and the doctrine of products liability, the *Cline* court concluded that:

> The General Assembly's choice to make the Code nearly coextensive with the coverage under § 402A, at least with respect to privity and the scope of injury, suggests clearly, we think, that it intended that products liability remedies in sales cases be treated within the confines of sales warranty law and that there be no remedy therefor outside the Code.

*Id.* at 979.

This Court is bound by the decision of the Delaware Supreme Court and must, therefore, reject DiIenno's strict liability claims. If DiIenno is to recover in this action it can only be under the UCC breach of warranty theory she alleges in Count five of her complaint. (D.I. 1.)

A warranty may arise under the UCC in three ways: an expressed warranty under section 2–313; an implied warranty of merchantability under section 2–314; or an implied warranty of fitness for a particular purpose under 2–315. *Del.Code Ann.* tit. 6, §§ 2–313, 2–314, 2–315 (1975 & Supp. 1987). In her complaint, DiIenno uses the generic term warranty, without specifying which of these warranties she is relying upon. (D.I. 1.) However, in her answering

brief, DiIenno chooses to rely on the expressed warranty and the warranty of fitness for a particular purpose. (D.I. 104 at 3.) The Court is of the opinion that she made the wrong choice.

■ DiIenno claims that she is entitled to relief under section 2–313 because defendants Owens-Illinois and Marstan breached their expressed warranty that the jar would perform as illustrated in the Owens-Illinois catalog: that it would open and close properly. (D.I. 104 at 7.) The Court disagrees. It is clear that a successful action for breach of an expressed warranty may not be maintained in Delaware absent some reliance by the buyer on the warranty. *Del.Code Ann.* tit. 6, § 2–313, Delaware Study Comment 1 (citing Delaware cases). There is no evidence in the record to suggest that DiIenno ever saw the Owens-Illinois catalog let alone relied on it when she purchased the jar. Absent such evidence, DiIenno's claim for breach of an expressed warranty must fail.

■ A warranty of fitness for a particular purpose arises when: (1) a buyer has a special purpose for certain goods; (2) the seller knew or had reason to know of that purpose; (3) the seller knew or had reason to know that the buyer was relying on the seller's superior skill to select goods that fulfilled that purpose; and (4) the buyer in fact relied on the seller's superior skill. *Cohen v. Hathaway*, 595 F.Supp. 579, 583 (D.Mass.1984) (applying Delaware law and quoting *Del.Code Ann.* tit. 6, § 2–315). None of these elements are present here. DiIenno contends that she purchased the jar for a particular purpose, to open and close it. (D.I. 104 at 4.) This argument is ridiculous. Opening and closing is a jar's ordinary purpose, not some special purpose possessed only by DiIenno. Moreover, DiIenno does not even attempt to establish any of the other elements listed above. An action for breach of the warranty for a particular purpose is thus unavailable to

---

**2.** The parties are in agreement that Delaware law applies to this case. (D.I. 101 at 8; 102 at 8; 103 at 7; 104 at 3).

**3.** The Uniform Commercial Code has been adopted in Delaware, as in most jurisdictions, and is codified at *Del.Code Ann.* tit. 6 §§ 1–101 to 11–109 (1975 & Supp.1987).

DiIenno. Her remedy lies, if at all, with the UCC's implied warranty of merchantability.

■ A successful merchantability action requires proof (1) that a merchant sold goods, (2) which were defective at the time of sale, (3) causing injury to the ultimate consumer, (4) the proximate cause of which was the defective nature of the goods, and (5) that the seller received notice of the injury. *F.E. Myers Co. v. Pipe Maintenance Services, Inc.*, 599 F.Supp. 697, 703 (D.Del.1984); *Neilson Business Equip. Center Inc. v. Monteleone*, 524 A.2d 1172, 1174 (Del.Supr.1987).

The major dispute in this case focuses on the second element, that the goods be defective at the time of sale. DiIenno maintains that sufficient evidence exists in the record from which a jury could infer that the jar was defective at the time of sale, and summary judgment is thus inappropriate. (D.I. 104 at 5–7.) In response, Owens-Illinois, Marstan, and Freshie insist that the record is devoid of any evidence of a defect in the jar and this case is thus ripe for summary judgment. (D.I. 101 at 9–15; 102 at 16–18; 103 at 10–14.)

The United States Supreme Court has recently shed additional light on the standards applicable to summary judgment motions. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The rule has always been that a court may not grant summary judgment on an issue unless there is no genuine issue of material fact with regard to that issue, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (1986). After *Anderson*, it is clear that in order for an issue of fact to be genuine and thus make summary judgment inappropriate, there must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party on that issue. *Anderson*, 477 U.S. at ——, 106 S.Ct. at 2511. The existence of evidence which is merely colorable or not particularly probative will not render summary judgment inappropriate. *Id.* Summary judgment is appropriate in this case because DiIenno has produced no evidence that the jar was

defective at the time of sale. This is an essential element of her *prima facie* case and one on which she bears the burden of proof. *Kates v. Pepsi Cola Bottling Co. of Salisbury, Md.*, 263 A.2d 308, 311 (Del. Supr.1970); *Towe v. Justis Bros.*, 290 A.2d 657, 658 (Del.Super.1972).

A defect may take the form of a design defect, where an entire product line is designed improperly, or a manufacturing defect, where a product line is properly designed but a particular item was manufactured incorrectly. *O'Brien v. Muskin Corp.*, 94 N.J. 109, 463 A.2d 298, 304 (1983); *Anthony Pools, a Div. of Anthony Inds. v. Sheehan*, 295 Md. 285, 455 A.2d 434, 441 (1983). DiIenno has failed to produce any evidence of either type of defect.

■ There is no evidence to indicate that the jar was designed defectively. On the contrary, the only evidence available on this issue suggests that the jar was free from design defects. The jar that injured DiIenno could not be examined for defects because her co-workers disposed of it immediately after the accident. (D.I. 88 at 33.) However, DiIenno purchased an identical jar from Freshie a week after the accident for an expert to examine for defects. (*Id.* at 25.) DiIenno's expert, James Faller, examined this "example jar" and concluded that it was free from any defects. (D.I. 101 at Ex. A.) Experts from Owens-Illinois reached a similar conclusion after examining another example jar from the same product line as the jar that injured DiIenno. (*Id.* at Ex. B.)

The Court finds this evidence conclusive on the issue of the reasonableness of the jar's design. The tested example jars were designed in the exact same way as the jar that injured DiIenno. (D.I. 88 at 25; 101 at Ex. B.) Thus, any defect in the design of the original jar would have shown up when the example jars were tested.

■ This is not true, however, with respect to a manufacturing defect. A manufacturing defect in the jar that injured DiIenno would not necessarily have been present in the example jars. The jars were all of the same design but they were not

necessarily manufactured and packaged in the same manner. Thus, the absence of a defect in the manufacturing of the example jars is not conclusive evidence that DiIenno's jar was similarly free from a manufacturing defect. But it is not incumbent upon the defendants to prove the lack of a manufacturing defect. As stated above, DiIenno bears the burden of producing some evidence that the jar had a manufacturing defect at the time of sale. *Towe,* 290 A.2d at 658.

The sum total of DiIenno's evidence on this issue consists of her deposition testimony of the circumstances surrounding the accident and an expert report concluding that the jar was defective. (D.I. 88; 101 at Ex. A.) At her deposition, DiIenno gave a detailed account of the jar's shattering, but she offered no explanation as to what caused the jar to shatter or how the jar was defective. (D.I. 88.) The report of her expert concludes that the jar must have been defective to shatter the way it did. (D.I. 101 at Ex. A.) However, this conclusion was not based on scientific tests or data but solely on DiIenno's account of the accident and the assumption that the jar must have been defective because it shattered. (*Id.*)[4] Thus DiIenno has produced no evidence of a manufacturing defect apart from the occurrence of the accident itself. This is wholly insufficient.

The fact that the accident occurred and DiIenno sustained injury is insufficient, without more, to infer that a manufacturing defect existed at the time of sale. *O'Brien,* 463 A.2d at 303; *Caterpillar Tractor Co. v. Beck,* 593 P.2d 871, 877 (Alaska 1979). DiIenno must make a *prima facie* case of injury *and* defect in order to get to the jury on her warranty claim. *F.E. Myer Co.,* 599 F.Supp. at 703. She has offered some evidence of injury but no evidence of a defect.

■ Nonetheless, DiIenno contends that a jury should be permitted to infer a defect from the evidence she presented. Al-

though not articulated as such, DiIenno's argument amounts to nothing more than a request for this Court to apply the doctrine of *res ipsa loquitur* ("res ipsa") to the facts of this case.

*Res ipsa* has been consistently applied in appropriate cases by the Delaware courts, *see, e.g., Skipper v. Royal Crown Bottling Co. of Wilmington,* 192 A.2d 910 (Del. Supr.1963); *Cicciola v. Delaware Coca-Cola Bottling Co.,* 172 A.2d 252 (Del.Supr. 1961); *Delaware Coach Co. v. Reynolds,* 45 Del. 226, 71 A.2d 69 (Supr.1950), and has been codified in *Del.Unif.R.Evid.* § 304 (1981 Repl.Vol.). *Res ipsa,* which is Latin for "the thing speaks for itself," is a rule of circumstantial evidence which permits a jury to infer negligence simply from the happening of an accident. *Del.Unif.R. Evid.* § 304(A)(1). Applying the doctrine of *res ipsa* to the facts of this case would greatly benefit DiIenno. It would permit the jury to infer a defect in the jar simply because the jar shattered. Unfortunately for DiIenno, however, the Court cannot apply *res ipsa* in this case for two reasons.

First, *res ipsa* applies only to negligence actions. It may not be used in actions for breach of warranty. *Hershenson v. Lake Champlain Motors Inc.,* 139 Vt. 219, 424 A.2d 1075, 1078 (1981); *Trust v. Arden Farms Co.,* 50 Cal.2d 217, 324 P.2d 583, 586 (1958).

Second, even if the Court were to ignore these decisions and consider applying the doctrine of *res ipsa* to this breach of warranty case, the facts do not justify its application. Del.Unif.R.Evid. 304 sets out four criteria which must be met before *res ipsa* can apply:

(1) The accident must be such as, in the ordinary course of events, does not happen if those who have management and control use proper care; and

(2) The facts are such as to warrant an inference of negligence of such force as

---

4. DiIenno's expert also based his opinion on the assumption that no trauma befell the jar between DiIenno's purchase of the jar and the accident. (D.I. 101 at Ex. A.) The Court be-

lieves this is much too generous an assumption. As will be discussed later in the text, there is a possibility that the jar experienced some trauma while at Freshies or in DiIenno's office.

to call for an explanation or rebuttal from the defendant; and

(3) The thing or instrumentality which caused the injury must have been under the management or control (not necessarily exclusive) of the defendant or his servants at the time the negligence likely occurred; and

(4) Where the injured person participated in the events leading up to the accident, the evidence must exclude his own conduct as a responsible cause.

*Del.Unif.R.Evid.* § 304(B). Without expressing any opinion as to the other three criteria, the Court finds that the facts of this case do not satisfy the first criterion.

The first criterion set out above mandates that the accident be one that would not have occurred, in the ordinary course of events, if the defendants had exercised proper care. This criterion does not require that the possibility of all other causes be eliminated but only that "their likelihood ... be so reduced that the greater probability of negligence lies at the ... [defendant's] door." *Phillips v. Delaware Power & Light Co.*, 202 A.2d 131, 133 (Del.Super. 1964).[5] The Delaware Supreme Court phrased the rule this way:

> *Res ipsa loquitur*, however, is subject to the same limitation as the rule permitting an inference of negligence from proven circumstances, i.e., if the injury is as consistent with the absence of negligence as with the existence of negligence, neither conclusion can be said to have been established by legitimate proof, and no issue is made for submission to the jury.

*Skipper*, 192 A.2d at 912.

The undisputed facts of this case do not suggest that the "greater probability" of fault for the accident lies with the defend-

ants. It is just as likely that the damage to the jar was caused by DiIenno or third parties. The jar remained on a self-service display shelf at Freshie and could have easily been dropped or jostled by Freshies' customers. (D.I. 94 at 11.) Moreover, the jar was placed on an open shelf near DiIenno's desk for six days, including nights and weekends while she was out of the office. (D.I. 88 at 18–19.) The jar could have been accidently mishandled by maintenance or security workers at night or DiIenno's co-workers while she was away from her desk.[6]

DiIenno argues that it is highly unlikely that the damage to the jar was caused by anyone in her office. In her opening brief she cautioned the Court against blaming the jar's shattering on "ghoulies and ghosties and long-legged beasties and things that go bump in the night." (D.I. 104 at 5.) While the Court concedes that the greater probability of fault does not lie with "ghoulies and ghosties," it must be remembered that they are not the only inhabitants of the Hercules Building. The Court does not find it so unlikely that a co-worker or maintenance man could have accidently dropped or mishandled the jar, perhaps while helping himself to some of DiIenno's peanuts.

Based on the above the Court concludes that it is just as likely that the damage to the jar was caused by its mishandling at the hands of DiIenno or others as it was by a manufacturing defect or mishandling by the defendants. This conclusion makes *res ipsa* unavailable in this case.

Without the aid of the doctrine of *res ipsa*, the undisputed facts are not sufficient to withstand the defendants' motions for summary judgment. The Court will thus grant the defendants' motions for

---

5. Rule 304 is basically only a codification of the common law of *res ipsa*. The first criterion, that the accident be one which would not have occurred in the ordinary course of events absent negligence on the defendants' part, has long been recognized in Delaware. *See, e.g., Skipper*, 192 A.2d at 912; *Phillips v. Delaware Power & Light Co.*, 202 A.2d 131, 133 (Del.Super.1964). Thus the cases cited by the Court which interpret this criterion predate the adoption of the Code.

6. There is evidence in the record that suggests the jar was handled by DiIenno's co-workers without her knowledge. DiIenno testified at her deposition that she never saw anyone remove peanuts from the jar. (D.I. 88 at 20.) But Mae Miller, DiIenno's co-worker, said that she removed peanuts from the jar on several occasions. (D.I. 86 at 18.)

summary judgment as to the count five warranty claim of DiIenno's complaint.

## CONCLUSION

For the reasons stated above, the Court will grant the summary judgment motions of defendants Owens-Illinois, Marstan, and Freshie as to counts one, two, three and five of DiIenno's complaint and dismiss that complaint in its entirety.[7]

An order will be entered in accordance with this Memorandum Opinion.

---

**7.** As stated earlier, Count four, a strict liability claim only against Freshie, has been voluntarily dismissed by DiIenno. (D.I. 63.)