LARRY D. STONES AND LORENE A. STONES, HUSBAND AND WIFE, APPELLANTS, V. SEARS, ROEBUCK & COMPANY, A CORPORATION, APPELLEE.

558 N.W.2d 540

Filed January 24, 1997.    No. S-94-1208.

Michael W. Pirtle and Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellants.

Craig A. Knickrehm and Kermit A. Brashear III, of Brashear & Ginn, for appellee.

Eugene L. Hillman and Patricia McCormack for amicus curiae Nebraska Association of Trial Attorneys.

CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and ROWLANDS, D.J.

CONNOLLY, J.

Larry D. Stones and Lorene A. Stones sued Sears, Roebuck & Company (Sears) for fire damage to their home after their Kenmore gas grill caught fire and the fire spread to their house, causing considerable damage. The operative petition sets out a number of theories of recovery, including strict liability in tort, negligence, and breach of implied warranty for a particular purpose. Finding no material issue of fact, the district court granted Sears' motion for summary judgment on all theories of recovery. Conceding that Sears was not the actual manufacturer of the grill, the Stoneses nevertheless appeal the district court's decision and request this court to adopt the "apparent manufacturer" doctrine for the strict liability claim. We decline to adopt the doctrine in the instant case and affirm the district court's decision granting summary judgment in favor of Sears on all theories of recovery.

## BACKGROUND

In July 1988, the Stoneses purchased a Kenmore propane grill from Sears at its Southroads location in Bellevue, Nebraska. After having the grill assembled by Sears' employees, the Stoneses took the grill home, where it was used several times a week throughout the spring and summer months.

On several occasions, the igniter portion of the grill would not work, requiring the Stoneses to call Sears to make repairs. All repair work performed on the grill between the date of purchase and the summer of 1991 were covered by the "Customer Maintenance Agreement Plan" the Stoneses purchased from Sears. This plan was similar to an extended warranty in that Sears agreed to pay for all parts and labor associated with repairing the grill. Although Sears provided this protection plan, Sunbeam Corporation, and not Sears, actually manufactured the propane grill.

Sears' service technicians made two visits to the Stoneses' residence in the summer of 1991 to make repairs. One such visit occurred on June 18, when Donald Dickman, a Sears service technician, responded to a service call from the Stoneses stating that the grill would not light and that the hose was "shot." Dickman replaced the hose connecting the propane tank to the

grill and then turned on the gas and tested the hose and its connections for leaks, but found none. In addition to replacing the hose, Dickman also ordered a new igniter, a new bottom grate, a new electrode, a new left valve, and ceramic rock for the grill. The ordered parts were taken to the Stoneses' residence on July 2 by David Wacker, another Sears service technician. Wacker installed the new parts, and then tested the grill for any leaks and determined that there were none. Between Wacker's July 2 visit and July 16, the Stoneses used the grill on at least two occasions without incident.

On July 16, 1991, Lorene Stones and her daughter Susan were grilling cube steaks at approximately 6:30 p.m. After grilling the steaks for approximately 15 minutes on "medium," Lorene left the meat on the grill and turned the temperature gauge to "low," allowing her and Susan to finish preparing the other dinner courses inside the house. When Susan went back outside to get the steaks, she noticed bright orange flames shooting from the grill. At that time, the grill was located approximately 12 to 18 inches from the garage wall and directly beneath the eave of the garage. Despite attempts by Larry Stones and his son to put out the fire, it spread into the eave of the garage, eventually moving up into the attic of the house, causing considerable damage.

The Stoneses subsequently brought this action against Sears under four separate theories: (1) strict liability in tort, (2) negligence, (3) breach of implied warranty of fitness, and (4) breach of the Magnuson-Moss Warranty Act.

James Belina, an expert for the Stoneses, surveyed the damage after the fire. Although Belina repeatedly stated he had no opinion as to whether Sears' service technicians were negligent in installing the replacement parts, he offered two possible causes for the fire: a manufacturing defect in the replacement parts *or* improper assembly of those parts by Sears' service technicians. Belina could not provide an opinion as to the exact failure of the grill leading to the fire.

Sears moved for a summary judgment on all theories. The district court sustained the motion, finding no genuine issue of material fact. The Stoneses appeal.

## ASSIGNMENTS OF ERROR

The Stoneses contend the district court erred (1) in failing to find, as a matter of law, that Sears was a "manufacturer" for purposes of Neb. Rev. Stat. § 25-21,181 (Reissue 1995) and (2) in sustaining Sears' motion for summary judgment.

## STANDARD OF REVIEW

Regarding questions of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Hawes, ante* p. 305, 556 N.W.2d 634 (1996); *Traphagan v. Mid-America Traffic Marking, ante* p. 143, 555 N.W.2d 778 (1996).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Chism v. Campbell*, 250 Neb. 921, 553 N.W.2d 741 (1996); *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Chism v. Campbell, supra; Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996).

## ANALYSIS

The Stoneses' first assignment of error relates to the strict liability cause of action brought against Sears. According to § 25-21,181:

> No product liability action based on the doctrine of strict liability in tort shall be commenced or maintained against any seller or lessor of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user, or consumer *unless the seller or lessor is also the manufacturer of the product or part thereof claimed to be defective.*

(Emphasis supplied.)

We have examined § 25-21,181 on one occasion in which we upheld a directed verdict in favor of a defendant corporation after the plaintiff failed to prove that the defendant was a manufacturer of the defective product. *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994).

Although the Stoneses admit that Sears was not the manufacturer of the grill in question, they contend that a strict liability claim is appropriate because Sears was the "apparent manufacturer" of the grill. As such, we are asked to adopt the "apparent manufacturer" doctrine.

### APPARENT MANUFACTURER DOCTRINE

The apparent manufacturer doctrine stems from the Restatement (Second) of Torts § 400 at 337 (1965), which states: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Comment *d*. to § 400 sets out the situations in which the doctrine applies, and states in part:.

> The rule stated in this Section applies only where the actor puts out the chattel as his own product. The actor puts out a chattel as his own product in two types of cases. The first is where the actor appears to be the manufacturer of the chattel. The second is where the chattel appears to have been made particularly for the actor. In the first type of case the actor frequently causes the chattel to be used in reliance upon his care in making it; in the second, he frequently causes the chattel to be used in reliance upon a belief that he has required it to be made properly for him and that the actor's reputation is an assurance to the user of the quality of the product.

*Id*. at 338.

In its essence, this doctrine simply allows a fact finder to transfer the liability of a manufacturer to a separate entity holding itself out as the manufacturer.

Two rationales are provided for the doctrine. First, it is argued that when a seller causes the public to believe that it is the manufacturer of the product (through labeling, advertising, et cetera), a consumer will rely on that company's reputation and care in making products. As such, the selling company

should be estopped from disclaiming any liability simply because it did not actually manufacture the product. See, *Burkhardt v. Armour & Co.*, 115 Conn. 249, 161 A. 385 (1932); *Davidson v. Montgomery Ward & Co.*, 171 Ill. App. 355 (1912). The second underlying rationale for the doctrine is that "where a defendant puts out a product as its own, the purchaser has no means of ascertaining the identity of the true manufacturer, and it is thus fair to impose liability on the party whose actions effectively conceal the true manufacturer's identity." *Hebel v. Sherman Equipment*, 92 Ill. 2d 368, 372, 442 N.E.2d 199, 201-02 (1982).

### APPROPRIATENESS OF DOCTRINE IN THIS CASE

Even if this court were inclined to adopt the doctrine, we decline to do so in the instant case because there is no evidence in the record that the Stoneses believed Sears was the manufacturer or that Sears held itself out as the manufacturer of the grill in question. In this regard, we note that there is no evidence in the record that the name "Sears" was on the grill. In fact, the assembly instructions for the grill explicitly referred to it as a "Kenmore" outdoor gas grill. While "Kenmore" may be commonly associated with Sears, there is no evidence supporting that contention in the record before us.

The Stoneses give great weight to the fact that Sears sold a customer maintenance agreement plan along with the grill. The fact that this plan closely resembles a warranty does not convince us that it causes the public to believe that Sears manufactured the grill. Indeed, Sears' technician Dickman testified that Sears often provides service to customers for non-Sears appliances.

While a grill owner's manual introduced into the record with Belina's testimony contained a picture of a grill with the word "Sears" on its base, there is simply no evidence that the grill in the picture was the same type of grill sold to the Stoneses. In fact, the manual was dated 1977, some 10 years before the Stoneses purchased their grill.

Because the record in the instant case simply does not support a cause of action against Sears under the apparent manu-

facturer doctrine, we leave for another day whether the doctrine is in conflict with the plain language of § 25-21,181.

The Stoneses' remaining assignment of error is that summary judgment was inappropriate because genuine issues of material fact exist. To adequately address this contention, we must examine each theory of recovery separately.

## STRICT LIABILITY

Our conclusion that the facts in this case do not warrant recovery under the apparent manufacturer doctrine necessarily supports summary judgment on the theory of strict liability. In support of its motion, Sears produced an affidavit from Sue Billington, an associate buyer with Sears, in which she stated that the manufacturer of the grill was not Sears, but Sunbeam Corporation. In addition, Billington stated that none of the replacement parts for the grill were produced by Sears. The Stoneses failed to produce any contrary evidence regarding these statements. Instead, as noted above, the Stoneses moved forward with their strict liability claim under the auspices of the apparent manufacturer doctrine. Because the undisputed facts in this case do not warrant application of the doctrine, we conclude that the district court properly sustained the summary judgment for the cause of action brought under the theory of strict liability.

## NEGLIGENCE

The Stoneses, in their second amended complaint, alleged that Sears was negligent in the following particulars:

> a. Failure to inspect the replacement hose and gas valve assembly for defects that would allow propane to escape, ignite and cause a fire;
>
> b. Failure to test the replacement hose and gas valve assembly for defects that would allow propane to escape, ignite and cause a fire;
>
> c. Failure to properly install and connect the replacement hose and gas valve assembly to the propane tank and to the grill, thereby allowing propane to escape, ignite and cause a fire; and

d. Failure to furnish and utilize nondefective replacement parts in repairing Plaintiffs' gas grill, thereby allowing propane to escape, ignite and cause a fire.

As with any negligence action, the Stoneses were required to adduce evidence showing that there was a negligent act or omission by Sears and that such act or omission was the proximate cause of their injury or was a cause which proximately contributed to it. See *Miles v. Box Butte County*, 241 Neb. 588, 489 N.W.2d 829 (1992). The fact that the grill caught fire is not enough to warrant a finding of negligence, for negligence is never presumed, and the mere happening of an accident does not prove negligence as a matter of law. *Scholl v. County of Boone,* 250 Neb. 283, 549 N.W.2d 144 (1996).

The evidence offered in support of and in opposition to summary judgment for the negligence claim consisted largely of deposition testimony. Both Larry Stones and Lorene Stones testified that they did not know what caused the fire and that they had no knowledge of a factual basis for the allegation that Sears' service technicians failed to properly attach the hose, thereby causing the fire. According to Dickman, the new hose that he installed on the Stoneses' grill on June 18, 1991, was properly replaced and tested negative for any leaks. Wacker also testified that when he worked on the grill July 2, the gas lines were checked for leaks and the grill was in proper working condition.

The Stoneses' expert, Belina, gave his opinion as to what caused the fire. In so doing, Belina originally stated that a portion of the grill's gas system failed somewhere between the regulator on the propane bottle and the point where the hose or fuel line was connected to the burner assembly. Belina could not provide an opinion as to the exact source of the failure, stating that the "exact malfunction of the cooking grill which caused the fire could not be determined." Throughout his deposition, Belina repeatedly testified that he had no opinion as to whether the actions of Dickman and Wacker in any way caused the fire. In fact, at one point, Belina specifically stated that "I don't have an opinion with regards to negligence" and that all of his opinions concerning the cause of the fire related solely to the actual grill and its parts.

At a later point in his deposition, Belina expanded his opinion to include two possible causes of the fire. In that respect, Belina opined that the fire could only have been caused by a manufacturing defect in the replacement parts or by an improper assembly or installation of the parts by the Sears service technicians. However, even after providing these two possible causes of the fire, Belina reiterated his inability to give an opinion as to what part was defective or whether the Sears service technicians were negligent. When specifically asked what his opinion was, the following exchange took place:

A. My opinion is . . . that either the parts were defective or the parts were not assembled properly.

Q. Okay. All right. Again, no specific — you cannot identify a specific defect with any specific part?

A. That is correct.

Q. And you cannot identify any specific action or inaction on the part of Mr. Dickman or Mr. Wacker which resulted in the fire?

A. That is correct.

As this excerpt shows, Belina provided a choice of possibilities as to what caused the fire. Additionally, in so doing, Belina could not supply any concrete opinion as to what part was defective, nor could he form an opinion as to whether the actions of Dickman and Wacker contributed to the cause of the fire. Conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment. See *Swoboda v. Mercer Mgmt. Co., ante* p. 347, 557 N.W.2d 629 (1997). Because the only evidence produced by the Stoneses regarding their negligence cause of action was provided by Belina and was based upon his speculation and providing a choice of possibilities, the district court was correct in granting summary judgment.

### BREACH OF IMPLIED WARRANTY FOR PARTICULAR PURPOSE

As a third theory of recovery, the Stoneses alleged that "Defendant impliedly warranted to Plaintiffs that the subject replacement parts for the gas grill were properly designed, manufactured and reasonably fit for their intended purpose." We read this cause of action as one for breach of the implied war-

ranty of fitness for a particular purpose. In fact, the Stoneses argue a breach of Neb. U.C.C. § 2-315 (Reissue 1992) in their brief. Section 2-315 provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

A plaintiff relying on the implied warranty of fitness for a particular purpose must prove that (1) the seller had reason to know of the buyer's particular purpose in buying the goods, (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer, in fact, relied upon the seller's skill or judgment. *Laird v. Scribner Coop*, 237 Neb. 532, 466 N.W.2d 798 (1991). Ordinarily, whether or not the implied warranty of fitness for a particular purpose arises in any individual case is a question of fact to be determined by the circumstances of the contracting between the parties. See *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358 (1978). In this regard, a buyer proceeding under this implied warranty must first provide some evidence that the seller knew of the buyer's particular purpose for which the goods are acquired. See *Laird v. Scribner Coop, supra.*

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his or her business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

§ 2-315, comment 2.

In examining the record, we are unable to detect any evidence that the Stoneses purchased the grill or its replacement parts for a "particular purpose." We also note that the Stoneses do not allege any particular use of the grill. Instead, pertinent testimony of Larry Stones and Lorene Stones establishes that

they cooked food on the grill on a regular basis throughout the spring and summer months. When the grill was not working properly, they would call Sears to have it repaired in conformance with the customer maintenance agreement plan. Quite obviously, the Stoneses purchased the grill and replacement parts for a customary purpose; the grilling of food. Liability under § 2-315 lies only when goods do not fulfill the specific need for which they were purchased, and not when the goods in question are defective per se or fail to meet their ordinary purpose. As such, we hold that summary judgment was appropriate because the warranty of implied fitness for a particular purpose does not apply when the goods in question are purchased and used for ordinary purposes. See, e.g, *DiIenno v. Libbey Glass Div., Owens-Illinois, Inc.*, 668 F. Supp. 373, 376 (D. Del. 1987) (buyer's claim that failure of jar to open and close without breaking was breach of § 2-315 warranty was "ridiculous" because opening and closing of jar are jar's ordinary purpose); *Royal Lincoln-Mercury Sales v. Wallace*, 415 So. 2d 1024 (Miss. 1982) (no § 2-315 warranty for car purchased only for normal transportation).

### Magnuson-Moss Warranty Act

Finally, we address whether summary judgment was appropriate for the Stoneses' claim against Sears under the Magnuson-Moss Warranty Act.

Enacted in 1975, the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq. (1994)) created a federal remedy for breach of written and implied warranties. *Hyler v. Garner*, 548 N.W.2d 864 (Iowa 1996). This remedy is specifically set forth at § 2310(d)(1), which provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal or equitable relief . . . ." In addition, a consumer who prevails under this section may recover attorney fees, as well as the costs and expenses associated with the action. § 2310(d)(2). For purposes of the act, the term "implied warranty" is defined as "an implied warranty arising under State law . . . ." § 2301(7).

The broad assignment of error in this matter is not helpful in ascertaining why the Stoneses believe summary judgment was inappropriate for their Magnuson-Moss Warranty Act cause of action. However, in their brief, the Stoneses argue that "the trial court erred in granting summary judgment on this issue as it relates to the issue of breach of implied warranty of fitness for a particular purpose." Brief for appellant at 30. Having determined that summary judgment was appropriate for the breach of implied warranty for a particular purpose cause of action, it follows that summary judgment was also appropriate on the Magnuson-Moss Warranty Act cause of action.

## CONCLUSION

In accordance with the foregoing analysis, we conclude that the district court was correct in granting Sears' motion for summary judgment on all theories of recovery.

AFFIRMED.

WHITE, C.J., participating on briefs.