CYNTHIA S. MAHLIN AND RICHARD J. MAHLIN, APPELLANTS,
v. CAROLINE GOC, APPELLEE.
561 N.W.2d 220

Filed April 4, 1997.   Nos. S-95-173, S-95-174.

Richard K. Watts and Julie L. Nicolas, of Mills, Watts & Nicolas, for appellants.

Thomas A. Otepka and Francie C. Riedmann, of Gross & Welch, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and SPETHMAN, D.J., and GRANT, J., Retired.

CONNOLLY, J.

The appellants, Cynthia S. Mahlin and Richard J. Mahlin, brought this premises liability action against the appellee, Caroline Goc, contending she owed them, as business invitees, a duty to warn them of the dangerous propensities of her husband, Jerome Goc. The district court for Hamilton County granted summary judgment in favor of Caroline Goc, finding no material issue of fact. We affirm, concluding that there exists no evidence that Caroline Goc knew or should have known of Jerome Goc's intentions to harm the Mahlins while they were on the Goc property.

## BACKGROUND

The Mahlins, both attorneys, filed a replevin action on behalf of their clients Clyde and Kathleen Brandon and Benjamin Saner against Jerome Goc. In the petition, it was alleged that Jerome Goc had unlawfully detained property, including certain thoroughbred racehorses, owned by the Brandons and Saner. The petition thus prayed for return of the goods, as well as $100,000 in damages.

Rather than proceed with the replevin action, Jerome Goc entered into a stipulation with the Brandons and Saner. Pursuant to the agreement, the Brandons, Saner, and Jerome Goc were to meet at the Goc residence on July 26, 1993, to arrange for the return of the horses and to sign mutual releases. The Mahlins and the attorney for Jerome Goc were also to attend the meeting.

On the morning of the meeting, all parties met at the Goc residence before traveling to the pastureland in which the horses were kept. Throughout the morning, the Brandons proceeded to round up the horses and property. Shortly before noon, the parties agreed to break for lunch and meet back at the Goc residence to finish loading the horses and property.

Tragic events began to unfold after lunch when the Brandons and the Mahlins were the first to return to the Goc residence. When the Mahlins entered onto the property, Jerome Goc shot Richard Mahlin in the face, chest, arm, and upper body with a 12 gauge shotgun. Jerome Goc also shot Cynthia Mahlin in the face with the shotgun and repeatedly kicked her in the head and body while she lay on the ground. Jerome Goc was subsequently killed when Richard Mahlin ran over him with a pickup truck.

Caroline Goc testified during her deposition that Jerome Goc was upset at the prospect of giving back the horses when the Brandons had failed to pay him rent for keeping them and that he stated, " 'I don't understand why these deadbeats can get away without paying their bills when we have to pay our bills.' " Concerning Jerome Goc's demeanor on the day of his death, Caroline Goc stated that he was extra quiet that day and did not have much to say.

The Mahlins brought suit against Caroline Goc for the injuries they suffered due to Jerome Goc's actions. Although the Mahlins filed separate petitions, each asserts the Mahlins were business invitees when they entered the Goc residence on July 26, 1993. As such, the Mahlins contend that Caroline Goc, as a landowner, owed them a duty to warn them of a dangerous condition on the land, namely her husband, Jerome Goc. Caroline Goc asserted in her answer that the Mahlins' injuries were the result of the unforeseeable criminal acts of Jerome Goc and thus filed motions for summary judgment. The district court granted Caroline Goc's motions as to both of the Mahlins' actions. The Mahlins appeal. As was the case in the district court, these appeals have been consolidated.

## ASSIGNMENT OF ERROR

The Mahlins' sole assigned error is that the district court incorrectly sustained Caroline Goc's motions for summary judgment because issues of material fact exist.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as

to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Burke v. Blue Cross Blue Shield*, 251 Neb. 607, 558 N.W.2d 577 (1997); *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997); *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997).

## ANALYSIS

The issue before us is whether Caroline Goc can be held liable for the criminal actions of Jerome Goc under a premises liability theory. Asserting they were business visitors of Caroline Goc's, the Mahlins argue she owed them a duty to warn of Jerome Goc's intentions to harm them while on her land.

The operative petitions of the Mahlins are identical with the exception of the damage request made by each. The pertinent paragraphs of each allege the following:

3. . . . Plaintiff was, at all times relevant hereto, an invitee of Defendant. At all times relevant . . . Defendant owed Plaintiff a duty to exercise reasonable care to keep the premises at 1240 Sunset Terrace Rd. safe for Plaintiff and to warn Plaintiff of dangerous conditions . . . .

4. That at the time that Plaintiff entered onto the premises at 1240 Sunset Terrace Rd., there existed a dangerous condition of which Defendant knew, or reasonably should have known, namely, that Plaintiff's [sic] spouse . . . had threatened violence toward Plaintiff and, in fact, planned to assault Plaintiff with a shotgun when [she/he] entered onto the premises. Further, that such condition posed an unreasonable risk of harm to Plaintiff, and Defendant knew, or should have known, that Plaintiff was not likely to discover such dangerous condition prior to coming onto the property.

An issue extensively briefed by both parties in this matter is whether Jerome Goc constituted a "condition" for purposes of premises liability. However, the Mahlins, during oral argument, abandoned this contention, and therefore we do not address this issue.

The remaining issue is whether Caroline Goc was under a duty to warn the Mahlins, who assert they were business invitees, of the dangerous propensities of Jerome Goc. The Mahlins direct us to Restatement (Second) of Torts § 344 (1965), which provides that a possessor of land who holds it open to the public for entry is liable for the intentional harmful acts of third persons toward members of the public who are on the land for business proposes. See *Hulett v. Ranch Bowl of Omaha*, 251 Neb. 189, 556 N.W.2d 23 (1996). In its entirety, § 344 provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

*Id*. at 223-24.

According to Caroline Goc, § 344 does not apply because the Goc residence was not "open to the public" for a business purpose on the day in question. Conversely, the Mahlins argue that the Gocs were in the business of keeping horses for rent and that all parties were on the land that day in furtherance of that business. Assuming but not deciding that the Mahlins were actually business invitees of Caroline Goc and that the principles set forth in § 344 apply to activities conducted at a private residence, we conclude that there exists no evidence that Caroline Goc knew or should have known of Jerome Goc's criminal and intentional acts toward the Mahlins.

In applying § 344, this court has noted that a business proprietor may be held liable for the intentional or criminal acts of

third parties only if those acts are foreseeable, that is, only if the proprietor knew or should have known that such acts were going to occur. See, e.g, *Hulett v. Ranch Bowl of Omaha, supra* (business liable for injuries to patron when criminal activity was foreseeable); *Erichsen v. No-Frills Supermarkets*, 246 Neb. 238, 518 N.W.2d 116 (1994) (supermarket owes duty to warn customers of criminal attack in light of numerous previous attacks in parking lot). Accord *Hughes v. Coniglio*, 147 Neb. 829, 25 N.W.2d 405 (1946) (restaurant owner not responsible for injuries to third party resulting from a third-party fight because such incidents had not occurred before).

Accordingly, for the Mahlins to overcome a motion for summary judgment they must show a genuine issue of material fact as to whether Caroline Goc knew or should have known that Jerome Goc would intentionally harm the Mahlins on the day in question. In addressing this question, we are reminded that summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Burke v. Blue Cross Blue Shield*, 251 Neb. 607, 558 N.W.2d 577 (1997); *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997).

In her motion for summary judgment, Caroline Goc offered portions of her own deposition. Similarly, the Mahlins, in response to the motion, also offered portions of Caroline Goc's deposition. The applicable portions of the deposition offered by both parties reveal the extent of Caroline Goc's knowledge as to Jerome Goc's attitude and demeanor on the day in question. As noted above, Jerome Goc made it known that he was upset at the prospect of returning the Brandons' and Saner's property without receiving compensation. When Caroline Goc was specifically asked what Jerome Goc thought of the replevin action initiated by the Brandons, she replied that he called them "deadbeats" and "was mad which would be normal." Caroline Goc stated that Jerome Goc "wasn't real happy" the weekend prior to the incident with the Mahlins but that he nevertheless readied the horses for the exchange. Concerning the day of the

incident, the following exchange took place during Caroline Goc's deposition:

Q So let's move then to Monday the 26th. What time generally did you and your husband get up most work days?

A Between 6:30 and 7.

Q And was there anything different about this date?

A No, there wasn't.

Q Did you talk that morning before he went outside about the fact that these people were coming for the horses and equipment?

A No.

. . . .

Q What was your husband's general mood, attitude or demeanor that day before you went out to the shop?

A He didn't have a whole lot to say.

Q Was there anything different about him than say had been a week before?

A Well, he was more quieter because he always had a personality, he was easy going. But he didn't have a whole lot to say.

Q Did he seem upset?

A Well, I guess you'd say he was upset. He didn't say a whole lot.

Q What was it about him that told you that?

A Well, it wasn't him just being quiet.

Q He was just quiet, extra quiet that day, is that true?

A That's true.

Q Did you talk to him about his mood?

A No.

The only information that can be gleaned from this exchange is the fact that Jerome Goc was upset at the prospect of returning property to the Brandons and that he was unusually quiet on the day of the exchange. Even when viewed in a light most favorable to the Mahlins, the testimony of Caroline Goc fails to reveal any knowledge on her part of Jerome Goc's intentions to harm the Mahlins. Moreover, we fail to see how one's being extra quiet, in and of itself, should create the suspicion that the individual is about to commit a criminal act. As such, we con-

clude that the facts concerning Caroline Goc's knowledge of Jerome Goc's dangerous propensities are undisputed and establish that she did not know, nor should she have known, that Jerome Goc would brutally attack and assault the Mahlins.

## CONCLUSION

Because there exists no issue of fact as to whether Caroline Goc knew or should have known of Jerome Goc's intentions to harm the Mahlins, we conclude the district court correctly entered summary judgment in this matter.

AFFIRMED.