145 F.3d 1339
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jeffrey NEHER; John Nobis; Pamela Nobis; Sue Holcomb; Vicki
Iyall; Jorgene Sullivan, Plaintiffs-Appellants,
v.
II MORROW INC., an Oregon corporation; Toppan Moore Co., a
Japanese corporation; United Parcel Service General Services
Co., a Delaware corporation; Inforite Corp., a California
corporation, Defendants-Appellees,
and
INTERESTED ATTORNEY, Interested Party, Real-party-in-interest.
 No. 97-35068.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1998.
June 11, 1998.
 
 Appeal from the United States District Court for the Western District of Washington.
 Before: THOMPSON and TASHIMA, Circuit Judges, and STAGG, District Judge.**
 MEMORANDUM*
 DWYER, J., Presiding.
 
 
 1
 Appellants, two former and three current package car drivers for United Parcel Service ("UPS"), appeal the district court's judgment for Appellees, United Parcel Service General Services Co. ("GSC"), II Morrow, Inc., Toppan Moore Co. ("TM"), and Inforite Corp. (collectively "Appellees") in their product liability action. Appellants claimed that electronic package tracking devices[1] used in their work caused them to suffer injuries of the wrists and arms.[2] Following a bench trial, the district court concluded that the devices did not proximately cause Appellants' injuries and so entered judgment for Appellees. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for a new trial.
 
 I. STANDARD OF REVIEW
 
 2
 Following a bench trial, the district court's findings of fact are reviewed for clear error and its conclusions of law de novo. Magnuson v. Video Yesteryear, 85 F.3d 1424, 1427 (9th Cir.1996); Saltarelli v. Bob Baker Group Med. Trust, 35 F.3d 382, 384 (9th Cir.1994). GSC and II Morrow contend that the district court's finding on proximate cause is to be reviewed for clear error, citing Exxon Co. v. Sofec, Inc., 54 F.3d 570, 576 (9th Cir.1995), aff'd, 517 U.S. 830, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996). While this may be true, Appellants are not disputing the court's finding on proximate cause, but the legal test the court applied in making its determination. The court's conclusion that the substantial factor test for causation was inappropriate in this case is a legal conclusion to be reviewed de novo. Magnuson, 85 F.3d at 1427. The district court's interpretation of state law is reviewed de novo. Coughlin v. Tailhook Ass'n, 112 F.3d 1052, 1055 (9th Cir.1997).
 
 II. DISCUSSION[3]
 
 3
 The Washington Product Liability Act ("WPLA"), RCW 7.72.010-7.72.060, imposes liability on a product manufacturer if its product is not reasonably safe as designed (design defect claim) or because adequate warnings or instructions were not provided (failure to warn claim). RCW 7.72.030(1). Under Washington law, a plaintiff may establish liability by using either a risk-utility test or a consumer expectation test for both types of claims. Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wash.2d 747, 818 P.2d 1337, 1343-46 (Wash.1992) (en banc) (failure to warn claim); Falk v. Keene Corp., 113 Wash.2d 645, 782 P.2d 974, 980 (Wash.1989) (en banc) (design defect claim). In a failure to warn claim, the manufacturer may be liable for a danger that is either known at the time of manufacture, or that becomes known after manufacture. RCW 7.72.030(1)(b) and (c).
 
 
 4
 The district court found no liability for either a design defect or a failure to warn. Although the court concluded that GSC was negligent in failing to provide its drivers with adequate warnings or instructions after it became aware of possible dangers in the use of the devices, it concluded that GSC was not a manufacturer or seller. No liability was therefore imposed pursuant to RCW 7.72.030(1)(c). Appellants contend that the district court erred by failing to apply the consumer expectation test in addition to the risk-utility test, and by using a "but for" test for proximate cause rather than a substantial factor test.[4] We agree.
 
 A. Consumer Expectation Test
 
 5
 The consumer expectation test has been established by Washington courts as an independent basis for liability for both design defect and failure to warn claims.[5] See Ayers, 818 P.2d at 1346 ("The consumer expectations test in RCW 7.72.030(3) provides an independent basis for liability."); Falk, 782 P.2d at 980 (if plaintiff fails to establish design defect under risk-utility test of RCW 7.72.030(1)(a), he or she may establish manufacturer liability under consumer expectation test); Bruns v. PACCAR, Inc., 77 Wash.App. 201, 890 P.2d 469, 474 (Wash.Ct.App.1995) (same). The district court found that the DIAD IA, DIAD IA1, and the DVA were reasonably safe under the design defect claim, but did not discuss either the risk-utility or the consumer expectation test. The (illegible text)Neher v Morrow, 97-35068 Filed June 11, 1998 court further found no liability under the failure to warn claim, relying on the risk-utility test in RCW 7.72.030(1)(b), but not mentioning the consumer expectation test of RCW 7.72.030(3).
 
 
 6
 TM and Inforite contend that the district court was not required to apply the consumer expectation test, citing Carr v. Yokohama Specie Bank, Ltd., 200 F.2d 251 (9th Cir.1952), for the proposition that a trial court is not obligated to address every one of a plaintiff's arguments. However, Carr and the other cases cited by TM and Inforite deal with whether the district court's factual findings are sufficient to support its conclusions. They differ from the situation here, where the district court simply did not address one of Appellants' alternate bases for liability.
 
 
 7
 Because the court failed to address the consumer expectation test, it made no findings on whether the devices would pass muster under this test. Similar to the risk-utility test, the consumer expectation test is a balancing test, but its focus is on whether an ordinary consumer would be aware of the dangers of the product, not on the product itself. See Ayers, 818 P.2d at 1346 ("we believe the ordinary consumer is unaware of the danger presented by the inhalation of baby oil"); Anderson v. Weslo, Inc., 79 Wash.App. 829, 906 P.2d 336, 340 (Wash.Ct.App.1995) ("The dangers of jumping [on a trampoline] are ... obvious enough to be contemplated by the ordinary consumer."). Factors to be considered in determining an ordinary consumer's reasonable expectations include "[t]he relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk," as well as "the nature of the product or the nature of the claimed defect." Seattle First Nat'l Bank v. Tabert, 86 Wash.2d 145, 542 P.2d 774, 779 (Wash.1975) (en banc).
 
 
 8
 The court did find that the devices, as used by most UPS drivers, "tended to cause CTDs," and that Appellants "did not know this and could not reasonably be expected to know it," even though GSC was aware of the risks. Findings at 8-10. Appellants argue that this finding is conclusive regarding the consumer expectation test; however, the court's findings are insufficient with respect to factors such as the cost of changing the DIAD's design and the feasibility of eliminating the dangers.
 
 
 9
 TM and Inforite contend that a ruling on the consumer expectation test was implicit in the court's finding that the devices were reasonably safe under R.C.W. 7.72.030(1)(a) and (b), and that findings on the consumer expectation test would have been duplicative. However, the Washington courts have consistently stated that the two tests provide alternate bases for liability. The risk-utility test focuses on the product itself, while the consumer expectation test focuses on what an ordinary consumer would expect or be aware of regarding the product. Because they require different inquiries, a ruling on the consumer expectation test is not implicit in the court's finding that the devices were reasonably safe. On remand, the court should consider not only the risk-utility test, but also the consumer expectation test.
 
 B. Substantial Factor Test
 
 10
 Appellants contend that the district court erred in refusing to adopt a substantial factor test for causation rather than relying on the traditional "but for" test. The court declined to adopt the substantial factor test, reasoning that it would be inappropriate because, while use of the DIAD devices is one of several possible causes of Appellants' injuries, the "other possible causes shown in the evidence are unrelated and innocent." Findings at 16.
 
 
 11
 Washington courts have stated that use of the substantial factor test is normally justified only when a plaintiff is unable to show that one event alone was the cause of the injury. See Daugert v. Pappas, 104 Wash.2d 254, 704 P.2d 600, 605 (Wash.1985) (en banc); Mavroudis v. Pittsburgh-Corning Corp., 86 Wash.App. 22, 935 P.2d 684, 688-89 (Wash.Ct.App.1997). The substantial factor test is appropriate in three types of cases: (1) where either one of two causes would have produced the identical harm, making it impossible for the plaintiff to prove the "but for" test; (2) where a similar, but not identical, result would have followed without the defendant's act; and (3) where one defendant has made a clearly proven but quite insignificant contribution to the result. Daugert, 704 P.2d at 605-06 (citing W. Page Keeton et al., Prosser and Keeton on Torts § 41 (5th ed.1984)); Mavroudis, 935 P.2d at 689 (same).
 
 
 12
 As the district court stated, Washington courts have adopted the substantial factor test where there are several actors who contributed in the same way to an injury, and it is impossible to "determine how much causal effect is attributable to each." Findings at 16. However, contrary to the district court's conclusion, Washington courts have not limited the substantial factor test to a situation involving multiple defendants and a product that clearly causes the injury. In fact, the Washington Supreme Court's description of when it is appropriate to adopt the test describes Appellants' situation--they are unable to show that the DIADs, rather than the other physical stresses of their jobs, alone caused their injuries. See Daugert, 704 P.2d at 605.
 
 
 13
 Daugert itself was a legal malpractice case and so did not involve multiple actors all of whom contributed to an injury. Nor did the court suggest that use of the test is so limited. The court considered but declined to adopt the substantial factor test based on its analysis of whether the case fell within any of the three categories listed in Prosser and Keeton. See id. at 605-06.
 
 
 14
 The district court also erred in its reasoning that the substantial factor test does not apply if the other possible causes of injury are "unrelated and innocent." Whether the other potential causes are innocent does not figure into the analysis. See Daugert, 704 P.2d at 606. In Daugert, the court focused on whether the two potential causes (the attorney's negligence in failing to timely file an appeal and the weakness of the underlying claim) would have produced the identical harm, led to similar results, or whether the attorney's negligence was a clearly proven but insignificant contribution to the result. See id. Adoption of the substantial factor test thus is not precluded if the other causes are unrelated and innocent.
 
 
 15
 Further, contrary to Appellees' argument, Washington courts make it clear that the substantial factor test, if adopted, is used in place of, not in addition to, the but for test. See id. at 605 (adopting the substantial factor test would be a change in the test for cause in fact); Mavroudis, 935 P.2d at 688-89 (speaking of a "change" from the but-for to the substantial factor test for causation).
 
 
 16
 Thus, the district court erred in its analysis of whether to adopt the substantial factor test. Use of the test is not precluded merely because the other potential causes of Appellants' injuries were unrelated and innocent. Further, Appellants' situation falls within the Washington Supreme Court's description of when the substantial factor test would be appropriate. The district court concluded that Appellants failed to establish that their use of the devices was a proximate cause of their injuries. However, this conclusion was based on Appellants' failure to satisfy the but for standard of causation. On remand, the district court should determine proximate cause under the substantial factor test.
 
 
 17
 C. Contract Specifications Defense and Inforite as Manufacturer
 
 
 18
 TM and Inforite urge us to affirm the district court on the basis of the contract specifications defense, which TM unsuccessfully raised in its Motion for Summary Judgment.[6] Under that defense, "a manufacturer is not liable for a design defect if the product is manufactured according to the buyer's specifications, unless the specifications are obviously dangerous and should not be followed." Austin v. Clark Equip., Co., 48 F.3d 833, 837 (4th Cir.1995).
 
 
 19
 The Washington Supreme Court has held, however, that the WPLA preempts common law product liability remedies in order to avoid "rendering the statute a nullity." Washington Water Power Co. v. Graybar Elec. Co., 112 Wash.2d 847, 774 P.2d 1199, 1205 (Wash.) (en banc), amended, 779 P.2d 697 (Wash.1989). While TM and Inforite urge the adoption of a common law defense, not a remedy, the same principle applies. The WPLA provides that "[a] product seller that did not participate in the design of a product and that constructed the product in accordance with the design specifications of the claimant or another product seller shall not be deemed a manufacturer for the purposes of RCW 7.72.030(1)(a) [design defect claim]." RCW 7.72.010(2). This provision precludes adoption of the common law contract specifications defense. RCW 7.72.010(2) does not apply to TM because it participated in the design of the product.
 
 
 20
 Inforite also contends that the district court erred in concluding that Inforite held itself out as a manufacturer and thus was a product seller and manufacturer pursuant to RCW 7.72.010. A party may have held itself out as a manufacturer by labeling a product with its own name, trade name, or trademark, or by advertising itself as the maker of the product. Hebel v. Sherman Equip., 92 Ill.2d 368, 65 Ill.Dec. 888, 442 N.E.2d 199, 202 (Ill.1982). TM manufactured the device, and Inforite sold it to GSC, but the label on the back of the DIAD IA contained both TM's and Inforite's names.
 
 
 21
 Inforite cites Hebel and Stones v. Sears, Roebuck & Co., 251 Neb. 560, 558 N.W.2d 540 (Neb.1997), to support its contention. In Hebel, the manufacturer of car wash equipment was held not to be the "apparent manufacturer" of a conveyor manufactured by someone else but used in conjunction with its own equipment. 65 Ill.Dec. 888, 442 N.E.2d at 203. Unlike the equipment in Hebel, where the defendant manufacturer's equipment was "purchased and sold" separately from the other manufacturer's equipment, Inforite's name was on the very product at issue here. Id. The equipment in Hebel "bore no identifying insignia" at all. Id. The product in Stones similarly did not contain the defendant's name. 558 N.W.2d at 545. We agree with the district court that Inforite held itself out as a manufacturer and therefore was a product seller and manufacturer pursuant to RCW 7.72.010.
 
 
 22
 The district court did not err in concluding that the common law contract specification defense was inapplicable, and that Inforite was a "manufacturer" under the WPLA.
 
 III. CONCLUSION
 
 23
 The district court erred in failing to apply the consumer expectation test of RCW 7.72.030(3) and in its analysis of whether to adopt the substantial factor test. We therefore reverse the judgment and remand for a new trial.
 
 
 24
 REVERSED and REMANDED.
 
 
 
 **
 The Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Cir. R. 36-3
 
 
 [1]
 These tracking devices are known as the Delivery Information Acquisition Device ("DIAD") and the DIAD Vehicle Adapter ("DVA")
 
 
 [2]
 Appellants have workers' compensation remedies against their employer, UPS, which is not a party to this action
 
 
 [3]
 The facts of this case are known to the parties and are not repeated here, except as necessary to understand this disposition
 
 
 [4]
 Appellants also contend that the district court erred by injecting a foreseeability requirement into the risk-utility test. Because we remand for a new trial, we do not need to address this argument. Appellants Iyall and Sullivan contend that the district court erred by not considering their argument that the DIAD devices aggravated preexisting conditions. This argument should be considered on remand
 
 
 [5]
 The consumer expectation test is based on RCW 7.72.030(3), which provides that "the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer."
 
 
 [6]
 Appellants contend that we may not review this issue because a denial of summary judgment is "not reviewable on an appeal from a final judgment entered after a full trial on the merits." Locricchio v. Legal Serv. Corp., 833 F.2d 1352, 1359 (9th Cir.1987). Appellants, however, read the Locricchio line of cases too broadly. Those cases apply only to review of an issue on which summary judgment was denied and which was later submitted to the trier of fact for resolution after trial. They do not apply to the circumstance here where an issue was not tried on the merits