Tarsha Hulett, appellant, v. Ranch Bowl of Omaha, Inc.,
a Nebraska corporation, appellee.

556 N.W.2d 23

Filed December 6, 1996.   No. S-95-014.

Richard J. Rensch, of Raynor, Rensch & Pfeiffer, P.C., for appellant.

Brian D. Nolan and Michael T. Findley, of Hansen, Engles & Locher, P.C., for appellee.

White, C.J., Caporale, Fahrnbruch, Lanphier, Connolly, and Gerrard, JJ.

Connolly, J.

The appellant, Tarsha Hulett, was attacked with a glass beer mug by another patron in the women's restroom at the Ranch Bowl in Omaha, Nebraska, while attending an after-hours

dance. Hulett commenced this action against the Ranch Bowl, asserting that its negligence was the proximate cause of injuries she sustained in the attack. A jury entered a verdict in favor of Hulett for $25,000. In setting aside this verdict, the district court held that the attack of Hulett was sudden and unexpected and was therefore unforeseeable. We reverse, because we conclude that the evidence and proper inferences adduced therefrom were sufficient to allow a jury to conclude that the attack of Hulett was foreseeable and could have been prevented by the Ranch Bowl.

## BACKGROUND

On May 17, 1992, at approximately 1 a.m., Hulett went to the Ranch Bowl for an after-hours dance party for persons over the age of 18. While in the women's restroom, Hulett was assaulted by Trina Wells with a glass beer mug. As a result, Hulett suffered multiple lacerations to nerves in her face and a tendon in her hand, requiring surgical repair.

In her amended petition, Hulett alleged that the Ranch Bowl's negligence was the proximate cause of these injuries. In particular, Hulett claimed the Ranch Bowl negligently failed to provide adequate security personnel and safety procedures and failed to clean up all glassware in the women's restrooms. It was also alleged that the Ranch Bowl knew, or should have known, that Hulett could be assaulted by another patron.

At trial, Hulett offered the testimony of Damien Turner, a former employee of the Ranch Bowl. Although not employed at the Ranch Bowl on May 17, 1992, Turner had worked the after-hours dance parties on several occasions. Turner was hired to work these dances because of his past work with gang members in the Omaha area, as well as his familiarity with violent criminal cases gained while employed by the county attorney's office. These experiences allowed him to act as a peacemaker or go-between for any potential fights between patrons. According to Turner, approximately three fights would occur each night he worked at the Ranch Bowl.

The usual security routine for after-hours dances consisted of a check of identification at the door as well as a pat down for any weapons or contraband. Approximately 15 security person-

nel, including police officers, private security, or civilian officers, would then patrol around inside the establishment during the actual dance. Turner testified that Ranch Bowl policy required him to check the men's restrooms for fights, drugs, alcohol, and gambling. While making these checks, Turner would routinely find alcohol bottles and glassware in the restrooms that had not been removed prior to the beginning of the dance. Turner stated that he specifically requested his supervisors to hire more female security personnel to check the women's restrooms for the same problems. In Turner's opinion, the Ranch Bowl simply did not employ enough female security personnel to adequately pat down incoming female patrons while simultaneously checking the women's restrooms.

Hulett testified that there was a "whole bunch" of glassware on the counter and on the floor in the women's restroom. According to Hulett, she received no warning of the ensuing attack against her with a glass beer mug because it "came out of the blue." When asked, Hulett said she could not pinpoint anything specific that would have alerted the Ranch Bowl that she was about to be attacked.

Ed George, a retired police officer and present security officer at the Ranch Bowl, testified that adequate security personnel were "scattered" all over the establishment on May 17. George also stated that he was unaware of any glassware in the restrooms that evening and that in his 6 years of working at the Ranch Bowl, he has never been aware of an attack in the women's restrooms. Based upon this experience, George did not consider glassware to pose a security hazard.

Similar testimony was offered by George DeWitt, an Omaha police officer who was the security manager at the Ranch Bowl on May 17. DeWitt stated that prior to Hulett's attack, glassware was not considered a safety issue. Although arguments had taken place in the restrooms on prior occasions, DeWitt testified that no fights or injuries had occurred. DeWitt further acknowledged that it was the policy of the Ranch Bowl to have security personnel check the restrooms for problems but not to specifically pick up glassware, although common sense would tell one to pick up glasses sitting on the counters. In DeWitt's opinion, a glass could constitute a dangerous weapon or instrument.

Ranch Bowl's final witness was its general manager, Ross Olsbo. According to Olsbo, some glassware was in the women's restrooms that night. Olsbo also asserted that there had never been a fight or altercation in a Ranch Bowl restroom prior to the attack of Hulett. Ranch Bowl moved for a directed verdict at the end of Hulett's case and once again at the close of the evidence. These motions were denied, and the case was submitted to the jury. A $25,000 verdict in favor of Hulett was returned. Subsequent to this verdict, the Ranch Bowl timely moved for a judgment notwithstanding the verdict. In granting this motion, the district court wrote:

> Upon a thorough review of this case, it is apparent from the evidence that both the altercation and resulting injury to the plaintiff all happened suddenly and unexpectedly, without any warning, and by the exercise of reasonable care could not have been foreseeable, anticipated, discovered, or prevented by the defendant. . . . Further, the defendant had no chance to intervene.

Hulett appeals.

## ASSIGNMENT OF ERROR

Hulett's sole assignment of error is that the district court incorrectly sustained Ranch Bowl's motion for judgment notwithstanding the verdict.

## STANDARD OF REVIEW

On a motion for judgment non obstante veredicto, or notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the evidence. *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996); *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996). In order to sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Id.*

## ANALYSIS

Hulett argues that a judgment notwithstanding the verdict should not have been entered in this case because a jury could reasonably have concluded, in light of the evidence produced at trial, that the attack in the restroom was foreseeable and could have been prevented by the Ranch Bowl.

We begin by noting that an owner of property is not an insurer of the land or the visitor's safety while on it. However, a business does owe a duty of reasonable care to a patron. This duty was first enunciated by this court in *Hughes v. Coniglio*, 147 Neb. 829, 25 N.W.2d 405 (1946). In adopting the business invitee duty rule set forth in the Restatement of Torts § 348 (1934), now Restatement (Second) of Torts § 344 (1965), the *Hughes* court stated:

> The modern general rule, summarized in its simplest terms, is that the proprietor of a place of business who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the premises for such a purpose for bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons, if the proprietor by the exercise of reasonable care could have discovered that such acts were being done or were about to be done, and could have protected the members of the public by controlling the conduct of the third persons or by giving a warning adequate to enable them to avoid harm.

147 Neb. at 833, 25 N.W.2d at 408.

Whether a business proprietor is liable for the adverse actions of a third party against an invitee depends primarily upon whether those actions were reasonably foreseeable to the proprietor. In the *Hughes* case, the facts established that a minor was injured in a restaurant as a result of two patrons' fighting. This court upheld the dismissal of the claim after noting that the restaurant was not a place known for fights or disorderly conduct. As such, the injury to the patron was sudden and unexpected and could not, by the exercise of reasonable care, have been predicted or prevented by the restaurant owner. In reaching this conclusion, the court stated that "the standard of care required [by a business proprietor] is graduated according to the

danger attendant upon the activities of the business pursued and depends upon the facts and circumstances surrounding each particular case." 147 Neb. at 832-33, 25 N.W.2d at 408.

A similar analysis was employed in *Erichsen v. No-Frills Supermarkets*, 246 Neb. 238, 518 N.W.2d 116 (1994), wherein we held that a supermarket could be liable for injuries a customer received in the parking lot after being attacked, beaten, and robbed by a purse snatcher. The plaintiff in that case pled facts alleging 10 incidents of similar criminal activity in the parking lot and surrounding premises during the 16-month period prior to the assault. In reversing the sustaining of No-Frills' demurrer, we held such previous criminal activity constituted sufficient notice to No-Frills that criminal acts upon its customers were reasonably foreseeable.

Foreseeability was also an issue in *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994), where this court held the Cutlers, owners of a building, were liable to a person assaulted in the elevator. After recognizing that prior acts or events may establish whether the acts of third parties are foreseeable, we noted that other business invitees had been assaulted on previous occasions. Furthermore, complaints about the assailant had been made to the Cutlers prior to the assault of the plaintiff. We held these facts imposed a duty on the Cutlers to take reasonable precautions to protect business invitees on their premises. See, also, *K.S.R. v. Novak & Sons, Inc.*, 225 Neb. 498, 406 N.W.2d 636 (1987) (whether history of criminal activity at leased premises makes assault on tenant foreseeable is question for trier of fact).

Unlike at the restaurant in *Hughes v. Coniglio, supra*, the evidence in the instant case establishes that altercations occur on a regular basis at the Ranch Bowl during the after-hours dances. Turner testified that an average of three fights occurred every night he worked. In fact, Turner was specifically hired to work at the Ranch Bowl because of his expertise in acting as a peacemaker in preventing fights among patrons. The Ranch Bowl acknowledged the potential for fights, as reflected by its policy of having security personnel periodically check the restrooms for fights. Indeed, the abundance of security personnel and pat-

down checks for weapons at the door were indicative of what could be described as a war zone.

The district court entered a judgment notwithstanding the verdict, apparently focusing on the fact that the attack on Hulett was sudden and came without warning. The specific attack in question may have occurred suddenly and unexpectedly as to Hulett. However, whether the Ranch Bowl is liable depends upon whether the attack was reasonably foreseeable by the Ranch Bowl. As made apparent by the cases cited above, the previous acts of third parties are to be examined in determining whether an injury to a patron was foreseeable. This point was made clear in *Erichsen v. No-Frills Supermarkets*, 246 Neb. 238, 241, 518 N.W.2d 116, 119 (1994), which states that a possessor of land may

> "know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford reasonable protection."

(Emphasis omitted.) (Quoting Restatement (Second) of Torts § 344, comment *f.* (1965).)

The fact that Hulett and the Ranch Bowl were not expecting Wells to attack Hulett makes little difference, for the existence of "many occasions of 'similar' criminal activity in one fairly contiguous area in a limited timespan may make further such acts sufficiently foreseeable to create a duty to a business invitee." *Erichsen v. No-Frills Supermarkets*, 246 Neb. at 243, 518 N.W.2d at 120.

Whether a history of criminal activity makes an assault foreseeable is a question of fact. *K.S.R. v. Novak & Sons, Inc., supra.* Giving Hulett the benefit of all proper inferences adduced from the evidence, we cannot say that the attack on Hulett was unforeseeable as a matter of law. The evidence

adduced at trial clearly supports a jury verdict against the Ranch Bowl for failure to use reasonable care to protect Hulett. The Ranch Bowl recognized the importance of checking the restrooms for altercations or fights. Furthermore, DeWitt, Ranch Bowl's security manager, acknowledged that glassware can be used as a dangerous weapon. This, coupled with the evidence establishing the routine existence of fights during the after-hours dances, was sufficient to allow a jury to conclude that the attack on Hulett was, in fact, foreseeable and that the Ranch Bowl failed to effectively prevent it by either removing the glassware from the restrooms or providing adequate security personnel to patrol the restrooms for fights or altercations between patrons.

## CONCLUSION

Under the facts of this case, whether the assault of Hulett was foreseeable and could have been prevented by the Ranch Bowl was a question of fact for the jury. Because the evidence and the proper inferences adduced therefrom clearly support the jury verdict against the Ranch Bowl, the district court erred in entering a judgment notwithstanding the verdict. Accordingly, the judgment of the district court is reversed, and this cause is remanded with directions to reinstate the jury verdict.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, J., not participating.

FAHRNBRUCH, J., concurs in the result.