JEFFREY J. KNOLL, APPELLANT, V.
BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA,
A CORPORATE GOVERNMENTAL BODY, APPELLEE.
601 N.W.2d 757

Filed October 29, 1999.    No. S-97-1292.

(1)

Anne K. Holland and J. Joseph McQuillan, of Walentine, O'Toole, McQuillan & Gordon, and James M. McQuillan and Edward D. Steenburg, of McQuillan, Steenburg & McQuillan, P.C., for appellant.

Richard R. Wood, General Counsel for the University of Nebraska, and John C. Wiltse for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Jeffrey J. Knoll, was a student at the University of Nebraska at Lincoln (UNL). He was hazed by members of the Phi Gamma Delta fraternity (FIJI), which hazing resulted in severe injuries. Knoll brought a tort action against the Board of Regents of the University of Nebraska (University), and both parties filed for summary judgment. The trial court granted summary judgment to the University, finding no duty. This case presents the question whether the University owed Knoll a duty to exercise reasonable care to protect Knoll from FIJI's actions. We conclude that whether a duty was owed is a question of law and determine that a duty was owed. We reverse.

## BACKGROUND

The stipulated facts and deposition testimony offered at the hearing on the parties' motions for summary judgment show the following: On November 3, 1993, during FIJI's "pledge sneak," four or five active FIJI members met Knoll in the basement of

Andrews Hall on the UNL campus. Knoll attempted to run, was tackled by the active members, and was then handcuffed to an active member. Knoll was taken to the FIJI house where he was handcuffed to a radiator. While handcuffed to the radiator, Knoll was given shot glasses of an alcoholic liquor and cans of beer by FIJI's officers and active members. Over the course of approximately 2½ hours, Knoll consumed 15 shots of brandy and whiskey and 3 to 6 cans of beer. Knoll became severely intoxicated and could no longer provide for his own welfare and safety. After becoming ill due to his intoxication, Knoll was taken to a restroom on the third floor of the FIJI house by his captors and handcuffed to a toilet pipe. Knoll broke loose from the handcuffs while unattended in the restroom and attempted to escape by exiting out the third-floor restroom window and sliding down a drainpipe. Knoll fell from the third-floor window to the ground below and suffered severe injuries. Knoll had a blood alcohol content of .209 grams of alcohol per 100 milliliters of blood. Knoll was 19 years of age when he fell and was injured.

The FIJI house is situated on land owned by the Phi Gamma Delta House Corporation. The FIJI house is considered to be a student housing unit subject to the UNL Student Code of Conduct (Code). The use of any alcoholic beverage in a student housing unit was a violation of the student housing regulations then in effect and a violation of the Code. Conduct that is unreasonably dangerous to the health or safety of other persons, or oneself, was also a violation of the Code, as was hazing. Unmarried students who were under the age of 19 at the beginning of the fall semester of the 1993-94 academic year were required by the University to live in a student housing unit during their freshman year.

It is routine for fraternities located at the UNL campus to participate in pledge sneak events. These fraternities are supposed to complete a form disclosing whether a pledge sneak event is planned and the details of that event, and file the form with the University. FIJI had not filed a pledge sneak form as of the date Knoll fell. However, the University was aware of at least two hazing incidents involving other fraternities and was aware of several instances of criminal conduct involving FIJI members.

Knoll filed suit against the University, alleging that the University had acted negligently in failing to enforce prohibitions against acts of hazing, the consumption of alcohol, and physically abusive behavior when the University knew or should have known that the FIJI house was in violation of the rules prohibiting such activities. The University filed a motion for summary judgment asserting that it did not owe Knoll a duty. Knoll likewise filed a motion for summary judgment, asserting that Knoll was entitled to judgment as a matter of law. The trial court sustained the University's motion and denied Knoll's. Knoll appeals the court's granting of the University's motion but did not appeal the denial of his motion for summary judgment.

## ASSIGNMENTS OF ERROR

Knoll asserts that the trial court erred in concluding that the University did not have a duty to supervise the FIJI house and to protect Knoll from harm and that the trial court erred in not finding a breach of that duty.

## SCOPE OF REVIEW

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999).

## ANALYSIS

■ The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty. See *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998). Actionable negligence cannot exist if there is no legal duty to protect the plaintiff from injury. *Id.* In determining whether a duty exists, this court employs a risk-utility test, considering (1) the magnitude of the risk, (2) the relationship of the parties, (3) the nature of the attendant risk, (4) the opportunity and ability to exercise care, (5) the foreseeability of the harm, and (6) the policy interest in the proposed solution. *Id.* Foreseeability alone is not dispositive. *Id.*

■ Knoll argues that the University owed him a duty as a landowner based on FIJI's handcuffing and abducting Knoll on the University's property. We have held that a business

proprietor is liable for the adverse actions of a third party against an invitee when those actions were reasonably foreseeable to the proprietor. *Ratigan v. K.D.L., Inc.*, 253 Neb. 640, 573 N.W.2d 739 (1998). See, also, *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997) (holding that landlord has duty to protect tenant against foreseeable criminal acts of third persons). UNL students, such as Knoll, are clearly the University's invitees. E.g., *Nero v. Kansas State University*, 253 Kan. 567, 861 P.2d 768 (1993) (noting that all but one court to address issue has concluded that students are invitees). See, also, *Johnson v. State*, 77 Wash. App. 934, 894 P.2d 1366 (1995) (holding that on-campus student residents are invitees).

The University contends that the landowner liability theory does not apply in the instant case because the actions that took place on the University's property were not criminal in nature, but, rather, were simply "horseplay." However, a third party's action need not amount to a violation of the criminal law to give rise to liability; such an act may be sufficient even if it is merely accidental. See *Hulett v. Ranch Bowl of Omaha*, 251 Neb. 189, 556 N.W.2d 23 (1996) (stating that third person's act may be accidental, negligent, or intentionally harmful).

The University also argues that it owed no duty because Knoll had superior knowledge of the danger. In *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d 212 (1995), we stated that landowner liability is predicated on proof of the possessor's superior knowledge, actual or constructive, of dangers to which the invitee is subjected and of which the invitee is unaware. However, the landowner liability at issue in *Richardson* was not predicated on the acts of third parties; rather, it concerned a condition of the land itself.

The "superior knowledge rule" does not apply to the instant case, which involves liability for the intentionally harmful acts of a third party. An invitee may very well know that the intentionally harmful acts of a third party are foreseeable on the landowner's property. That fact does not obviate the invitee's expectation that the landowner will exercise reasonable care in providing protection. If it did, landowners in obviously high crime areas would have no duty to provide protection at all, since an invitee would always be aware of the danger. Awareness of

the danger in such cases is irrelevant; it is the landowner that has superior knowledge of, and the ability to provide, protection.

We conclude that the landowner liability theory applies in the instant case and that thus, if FIJI's actions in handcuffing and abducting Knoll were reasonably foreseeable, the University owed Knoll a duty to protect.

■ This court has long held that whether a legal duty exists for actionable negligence is a *question of law* dependent on the facts in a particular situation. *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999); *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998). Prosser and Keeton have stated:

> [Duty] is entirely a question of law . . . and it must be determined *only* by the court. *It is no part of the province of a jury to decide . . . whether the Long Island Railroad is required to protect Mrs. Palsgraf from fireworks explosions.* A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant. A decision that, if certain facts are found to be true, a duty exists, leaves open the other questions now under consideration [which are the weight and sufficiency of the evidence, and the general and particular standard of conduct].

(Emphasis supplied.) W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37 at 236 (5th ed. 1984).

As the quotation from Prosser and Keeton demonstrates, in the context of determining the existence of a duty, foreseeability is a question of law for the court to resolve. See, e.g., *Clohesy v. Food Circus Supermkts.*, 149 N.J. 496, 694 A.2d 1017 (1997); *Ann M. v. Pacific Plaza Shopping Center*, 6 Cal. 4th 666, 863 P.2d 207, 25 Cal. Rptr. 2d 137 (1993); *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 647 P.2d 713 (1982); *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313 (Colo. 1980); *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 343 N.E.2d 465 (1976). "[T]he fact that a question of law involves the consideration of factual issues does not turn the former into a 'question of fact' or necessarily mire the court in evidentiary issues of weight and credibility." *Clemets v. Heston*, 20 Ohio App. 3d 132, 135 n.1, 485 N.E.2d 287, 290 n.1 (1985) (stating that duty is question of law for court).

Nonetheless, this court has held that whether a history of criminal activity makes an assault foreseeable is a question of fact. *Hulett v. Ranch Bowl of Omaha*, 251 Neb. 189, 556 N.W.2d 23 (1996). See, also, *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997) (holding that foreseeability is factor in establishing duty and is question of fact in negligence case). In so holding, this court cited *K.S.R. v. Novak & Sons, Inc.*, 225 Neb. 498, 406 N.W.2d 636 (1987).

In *K.S.R.*, this court stated that questions of foreseeability, negligence, and proximate cause are questions for the trier of fact, citing *Brown v. Nebraska P.P. Dist.*, 209 Neb. 61, 306 N.W.2d 167 (1981). However, in *Brown*, the foreseeability analysis was limited to proximate cause—duty was not at issue. This court stated: " 'The question whether negligence is, in view of the intervening negligence of a third person, such a continuing and substantial factor in producing an accident as to be a proximate cause of the injury, is a question of fact, rather than a question of law.' " *Brown v. Nebraska P.P. Dist.*, 209 Neb. at 67, 306 N.W.2d at 171. Thus, foreseeability as a question of fact migrated from the proximate cause context in *Brown*, to the duty context in *Hulett*, without any analysis whatsoever.

As we noted in *Kozicki v. Dragon*, 255 Neb. 248, 583 N.W.2d 336 (1998), citing *Hill v. Yaskin*, 75 N.J. 139, 380 A.2d 1107 (1977), the distinction between foreseeability as it applies to duty and as it applies to proximate cause is a critical distinction that is too often and too easily overlooked.

> Foreseeability as a determinant of a business owner's duty of care to its customers is to be distinguished from foreseeability as a determinant of whether a breach of duty is a proximate cause of an ultimate injury. Foreseeability as it impacts duty determinations refers to " 'the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care.' " . . . Foreseeability that affects proximate cause, on the other hand, relates to "the question of whether the specific act or omission of the defendant was such that the

ultimate injury to the plaintiff" reasonably flowed from defendant's breach of duty. . . . Foreseeability in the proximate cause context relates to remoteness rather than the existence of a duty.

(Citations omitted.) *Clohesy v. Food Circus Supermkts.*, 149 N.J. at 502-03, 694 A.2d at 1020-21. It is only in the proximate cause context that foreseeability is a question of fact for the jury. See *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998).

■ We conclude that foreseeability, in the duty context, is a legal question for the court. See *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999), and *Koltes v. Visiting Nurse Assn.*, 256 Neb. 740, 591 N.W.2d 578 (1999) (analyzing foreseeability as question of law in duty context). To the extent that *Ratigan v. K.D.L., Inc.*, 253 Neb. 640, 573 N.W.2d 739 (1998); *Gans v. Parkview Plaza Partnership, supra*; *Hulett v. Ranch Bowl of Omaha, supra*; and *K.S.R. v. Novak & Sons, Inc., supra*, indicate to the contrary, they are hereby overruled. Therefore, the question in the instant case is not whether there was sufficient evidence for the jury to conclude that the act perpetrated against Knoll was foreseeable, it is a legal question for this court as to whether the University owed a duty to Knoll.

■ In analyzing foreseeability in the duty context, we have noted that a prior criminal history need not involve the same suspect to make the further criminal acts reasonably foreseeable, *Erichsen v. No-Frills Supermarkets*, 246 Neb. 238, 518 N.W.2d 116 (1994), nor need it involve the same type of crime, *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997) (indicating that burglary may be enough to make sexual assault foreseeable). Likewise, the prior acts need not have occurred on the premises. *Erichsen v. No-Frills Supermarkets, supra*. Even one such prior incident may be enough. *Gans v. Parkview Plaza Partnership, supra*. " '[I]t is the totality of the circumstances, not solely the number or location of prior incidents, that must be considered in determining foreseeability.' " *Doe v. Gunny's Ltd. Partnership*, 256 Neb. at 660, 593 N.W.2d at 290, quoting *Gans v. Parkview Plaza Partnership, supra*. Thus, we must determine whether, under the totality of the circumstances, FIJI's acts of handcuffing and abducting Knoll on the University's property were foreseeable by the University.

In the instant case, the University was aware of two separate hazing incidents involving fraternities, one of which occurred on September 23, 1989, and another on October 15, 1992. The October 15 incident involved grabbing and physically removing students from a building. These incidents did not involve FIJI.

The University was also aware of several incidents involving FIJI members. On February 9, 1989, a FIJI member was cited by UNL police for resisting arrest. On February 12, several FIJI members were found in possession of alcohol at the FIJI house, and had one or more females present at the house after the expiration of visitation hours for members of the opposite sex. One member was convicted of sexually assaulting a female high school student at the FIJI house as a result of this incident. On August 20, 1993, a FIJI member was found intoxicated and unconscious in a third-floor restroom of the FIJI house by UNL police. On September 4, an altercation occurred between members of FIJI and the Alpha Tau Omega fraternity in which UNL police intervened. Finally, on September 13, two FIJI members attempted to break into the Alpha Phi sorority house.

It is true there is no evidence that any of this activity occurred on the University's property. However, there is evidence that the FIJI house is located near the University's property. In *Doe v. Gunny's Ltd. Partnership, supra*, we determined that evidence of criminal activity, including assault and larceny, occurring near the landowner's property was relevant to our foreseeability analysis. See, also, *Erichsen v. No-Frills Supermarkets, supra* (indicating that evidence of criminal acts occurring on surrounding premises is relevant). Moreover, there is evidence that UNL exercised control over the FIJI house by considering it to be a "student housing unit" subject to the Code. The Code contained regulations prohibiting certain conduct, including consumption of alcohol; unreasonably dangerous conduct, including but not limited to hazing; and violation of Nebraska laws, which prohibit hazing and the provision of alcoholic liquor to minors. Insofar as we can determine from the record, the regulations set forth in the Code apply with equal force to student housing units which are situated on property owned by the University and those, such as the FIJI house, which are not. The prior instances of alcohol abuse and other law violations occur-

ring on the FIJI house premises are therefore particularly pertinent to our determination of whether a duty exists in this case.

The stipulated facts show that the University was aware of prior hazing instances where students had grabbed and physically removed other students from buildings, had coerced other students into drinking alcohol, and had engaged in other harassing activities. The record reflects that the University had notice that pledge sneaks could lead to illegal hazing. Thus, the University could have foreseen various forms of student hazing on its property, even though FIJI failed to disclose the pledge sneak event, including typical fraternity abductions and the consequences that could reasonably be expected to result from such activities. As such, we conclude the University owes a landowner-invitee duty to students to take reasonable steps to protect against foreseeable acts of hazing, including student abduction on the University's property, and the harm that naturally flows therefrom.

We recognize that reasonable minds could differ on the issue whether the University breached its duty to act reasonably under the circumstances; but this issue, along with the issue of proximate causation, should be tried to the finder of fact with the benefit of the totality of the evidence presented at trial.

REVERSED.