776 N.W.2d 21 (2009)
18 Neb. App. 134
Vivika A. DEVINEY, appellant,
v.
UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, appellee.
No. A-08-1259.
Court of Appeals of Nebraska.
November 17, 2009.
*24 Richard J. Dinsmore and Jayson D. Nelson, of Law Office of Richard J. Dinsmore, P.C., L.L.C., Omaha, NE, and Cortney S. LeNeave and Richard L. Carlson, of Hunegs, LeNeave & Kvas, P.A., Minneapolis, MN, for appellant.
William M. Lamson, Jr., Anne Marie O'Brien, and Angela J. Miller, of Lamson, Dugan & Murray, L.L.P., Omaha, NE, for appellee.
SIEVERS, CARLSON, and CASSEL, Judges.
SIEVERS, Judge.
Vivika A. Deviney brought an action under the Federal Employers' Liability Act (FELA) against Union Pacific Railroad Company (Union Pacific) alleging that she contracted "West Nile" virus (WNV) while employed as a conductor by Union Pacific. The district court for Douglas County granted summary judgment in favor of Union Pacific, from which judgment Deviney appeals. We reverse, and remand for further proceedings.

FACTUAL BACKGROUND
Deviney's FELA case seeks to recover damages for severe injuries resulting from her contracting WNV, allegedly while working as a conductor for Union Pacific at Bill, Wyoming, on or about August 3, 2003. As a result of the virus, Deviney suffered 84-percent hearing loss in her right ear and 20-percent hearing loss in her left ear and also suffers from fatigue, vertigo, reduced vision, and left-side weakness.
In early August 2003, Deviney worked a late shift where she and an engineer took a coal train from the trainyard in Bill to the coal mines near Gillette, Wyoming. While en route to the mines, the train had to stop on a double mainline near "East Cadaro Junction." As part of the conductor's job, Deviney was required to get off the train *25 to perform a roll-by inspection of a passing train at that location.
Deviney got off her train to perform the inspection. She described the situation as follows: "You couldn't stand still because the mosquito[e]s were so bad. I had to... walk and watch the train as it went by and wave my arms." Deviney estimated that she was bitten on her hands and neck more than once, but less than 25 times, while performing the inspection. Deviney radioed the dispatcher to complain about the mosquitoes, but Deviney states that the dispatcher's only response was to laugh. Near East Cadaro Junction, there was a pond on the mine property that always had water in it. The water came from a silo owned by the mining company. Deviney was wearing long pants, a sweater, and her own insect repellant containing 7 percent "DEET."
Deviney stated that the mosquitoes were also bad inside the Bill trainyard. She stated that there were mosquitoes "squished" on walls inside the tieup room in Bill. Deviney also stated that there was standing water in the Bill trainyard from washing equipment, and a pond on the property.
Deviney's last day of work was August 4, 2003. Within a week, she developed headaches, diarrhea, vomiting, and nausea. She was eventually diagnosed with WNV. She was in a hospital and then a rehabilitation facility from August 13 to October 17.

PROCEDURAL BACKGROUND
Deviney filed a complaint against Union Pacific pursuant to FELA. She alleged that on or about August 3, 2003, she was bitten by mosquitoes while in the course and scope of her employment, resulting in the diagnosis of WNV. She also alleged that she suffered severe and permanent injuries and disability and that such were caused by Union Pacific's negligence in violation of FELA.
Union Pacific filed a motion for summary judgment alleging that there was no genuine issue of material fact and that it was entitled to summary judgment as a matter of law.
In its order, the district court sustained Union Pacific's motion for summary judgment. The district court found there was no specific information from which the railroad could be charged with knowledge about large concentrations of mosquitoes where Deviney claims to have been bitten, at either East Cadaro Junction or the trainyard in Bill. The district court also held:
[Union Pacific] has made concerted efforts to eradicate mosquito larvae, and has warned its employees about the dangers of WNV. Couple[d] ... with the almost insurmountable task of preventing just a single mosquito bite and the incredibly small risk of becoming severely ill from WNV even if bitten by an infected mosquito, [that] leads me to the conclusion that the risk of harm to ... Deviney was not reasonably foreseeable to, or preventable by, [Union Pacific].
Finding that there was no genuine issue of material fact, the district court granted Union Pacific's motion for summary judgment and dismissed Deviney's complaint with prejudice. Deviney's motions to complete the record and to alter or amend judgment were denied. She now appeals.

ASSIGNMENTS OF ERROR
Deviney alleges that the district court erred in (1) holding, as a matter of law, that Union Pacific discharged its duty of providing Deviney with a reasonably safe place to work and (2) holding that Deviney's injuries were not reasonably foreseeable.

*26 STANDARD OF REVIEW
A court should grant summary judgment when the pleadings and evidence admitted show that no genuine issue exists regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. King v. Burlington Northern Santa Fe Ry. Co., 277 Neb. 203, 762 N.W.2d 24 (2009). In reviewing a summary judgment, we view the evidence in a light most favorable to the party against whom the judgment is granted and give such party the benefit of all reasonable inferences deducible from the evidence. Id.

ANALYSIS
Deviney brought her FELA claim in state court. As stated in Crafton v. Union Pacific RR. Co., 7 Neb.App. 793, 797-98, 585 N.W.2d 115, 121 (1998):
Courts of the United States and courts of the several states have concurrent jurisdiction over claims controlled by FELA.... In disposing of a claim controlled by FELA, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under FELA are determined by the provisions of the act and interpretative decisions of the federal courts construing FELA.
(Citations omitted.)
"Under FELA, railroad companies are liable in damages to any employee who suffers injury during the course of employment when such injury results in whole or in part due to the railroad's negligence." McNeel v. Union Pacific RR. Co., 276 Neb. 143, 149, 753 N.W.2d 321, 328. "This court has stated that to recover under FELA, an employee must prove the employer's negligence and that the alleged negligence is a proximate cause of the employee's injury." Id. The common-law elements of negligence include duty, breach, foreseeability, and causation. See Crafton v. Union Pacific RR. Co., supra.

Duty and Breach.
Union Pacific's duty is clear: "A railroad has a non-delegable duty to provide its employees with a reasonably safe place to work." Pehowic v. Erie Lackawanna Railroad Company, 430 F.2d 697, 699 (3d Cir.1970). Thus, in order to recover for negligence under FELA, Deviney must show that Union Pacific breached its duty to provide her with a reasonably safe workplace. And "only when `one would have to infer from no evidence at all' that the defendant breached its duty can a court take the question from the jury and enter a judgment as a matter of law for the defendant." Glass v. Birmingham Southern R.R. Co., 905 So.2d 789, 795 (Ala. 2004) (quoting Moore v. Chesapeake & O.R. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547 (1951)).
In the present case, there is certainly some evidence that Union Pacific breached its duty to provide Deviney with a reasonably safe place to work. Union Pacific knew of the dangers associated with WNV, even publishing an accident prevention bulletin in August 2002 regarding such. Union Pacific also knew that WNV is a "mosquito-borne disease," as such was specifically stated in that bulletin. The general manager of safety for Union Pacific stated in his deposition that he became aware of WNV in 2002 through the news and information provided by the federal government's Centers for Disease Control and Prevention. He also stated that Union Pacific's acting medical director monitors that federal agency. The manager of safety stated that Union Pacific started utilizing larvicide for mosquito control in the Bill area in the late 1990's.
*27 Bernie Boersma, Union Pacific's treatment plant and operations manager in Bill, stated in his affidavit that one of his duties is to treat Union Pacific's property in Bill for insects like mosquitoes. Boersma stated that Union Pacific has an evaporation pond about one-quarter to one-half mile from its Bill trainyard office that holds runoff and that there is a creek south of the office. Information received into evidence states that mosquitoes breed in standing water and that even a small bucket with stagnant water in it for 7 days can become home to up to 1,000 mosquitoes.
Boersma averred that he treats the evaporation pond with larvicide as necessary, stating: "When there is a noticeable problem, I drop a pellet into the water. The appearance of mosquitoes will constitute a noticeable problem to me." Boersma did not recall whether or not he treated the pond in 2003. Boersma stated that he uses a larvicide to control for mosquitoes in the trainyard. The larvicide's information and instruction sheet was received into evidence. The information makes it clear that the treatment is for larval populations, but that some larvae may hatch and partially develop before dying. The information in evidence about the larvicide states that it "kills mosquitoes before they are old enough to bite." Thus, if Boersma was only treating the pond when he noticed the appearance of mosquitoes, it could be inferred that he was not properly using the larvicide to treat the property for mosquitoes, because proper treatment with the larvicide would have occurred before the mosquitoes hatched.
With respect to East Cadaro Junction, there was a pond on the mine property that always had water in it. The water came from a silo owned by the mining company.
FELA imposes upon the employer a non-delegable duty to use reasonable care to furnish [its] employees a safe place to work, ... and this duty extends beyond its premises and to property which third persons have a primary obligation to maintain.... This duty includes a responsibility to inspect the third party's property for hazards and to take precautions to protect the employee from possible defects ....
Carter v. Union Railroad Company, 438 F.2d 208, 210-11 (3d Cir.1971) (citations omitted). Thus, Union Pacific's failure to treat for mosquitoes near East Cadaro Junction could be seen, when summary judgment is sought, as a breach of its duty to provide Deviney with a reasonably safe place to work, given that she was required to get off of her train to do a roll-by inspection of a passing train.
Based on the foregoing evidence, and reasonable inferences therefrom, there is certainly some evidence that Union Pacific breached its duty to provide Deviney with a reasonably safe place to work. Thus, we turn to the other elements of a FELA claim for negligence.

Foreseeability.
The district court also found, as a matter of law, that Deviney's injuries were not reasonably foreseeable. "The essential element of reasonable foreseeability in FELA actions requires proof of actual or constructive notice to the employer of the defective condition that caused the injury." Grano v. Long Island R. Co., 818 F.Supp. 613, 618 (S.D.N.Y.1993). In Grano, employees of a railroad who contracted Lyme disease while working on signal equipment brought FELA claims. The court found the railroad was aware that there were tick problems and that ticks, known carriers of Lyme disease, were found in areas where workers would be. The railroad sprayed, but the spraying *28 was mainly to kill poison ivy and no particular attention was given to ticks. There was no testimony from any of the plaintiffs that they were bitten by ticks. The court also noted that although Lyme disease was discussed as a problem, no comprehensive program was developed to protect employees working in tick-infested areas. The court held that the railroad knew or should have known of the tick infestations and of the risk of infection by ticks which transmit Lyme disease. The court then held that it was foreseeable that the employees would be bitten by ticks and thereafter infected with Lyme disease.
In Pehowic v. Erie Lackawanna Railroad Company, 430 F.2d 697 (3d Cir.1970), a railroad employee was stung by a bee while working, became ill, and was treated for a reaction to the bee sting. The lower court granted the railroad's motion to dismiss, and the employee appealed. The Third Circuit noted the evidence that the employee had, prior to being stung, informed the railroad's dispatcher of the presence of brush and bees in the area adjacent to the railroad track where the employee was working and had requested to leave the area because of the condition. Therefore, the court found that the question of whether the railroad was negligent in failing to mitigate the condition was for the jury. The Third Circuit held that the railroad was chargeable with notice of the existence of the brush and the presence of the bees in large concentrations.
In Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), a railroad's right-of-way contained a pool of stagnant water, in and about which were dead and decayed rats and pigeons, or portions thereof. While the plaintiff was working near the pool, he experienced an insect bite on his left leg. The wound subsequently developed an infection which progressively worsened and spread throughout the plaintiff's body, eventually necessitating the amputation of both of his legs. The U.S. Supreme Court stated that the foreseeability requirement had been satisfied when the jury found the railroad was negligent in maintaining the filthy pool of water. And the Supreme Court noted that "[i]t is widely held that for a defendant to be liable for consequential damages he need not foresee the particular consequences of his negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable." Gallick v. Baltimore & Ohio R. Co., 372 U.S. at 120, 83 S.Ct. 659.
In the present case, Union Pacific knew about WNV in 2002 and thought the issue was significant enough to post an accident prevention bulletin. Union Pacific knew that WNV is a "mosquito-borne disease" and knew or should have known that even a small amount of stagnant water can become home to a significant number of mosquitoes. The trainyard in Bill had an evaporation pond and a nearby creek. However, the trainyard was treated for mosquitoes only when Boersma, the treatment plant and operations manager in Bill, thought the mosquitoes constituted a noticeable problem. Furthermore, in her deposition, a public health physician testified as follows in response to a question by Deviney's counsel:
Q. And are you aware of any investigation by [Union Pacific] to confirm that, in fact, co-workers had been complaining in 2003, prior to ... Deviney's bites, about the presence of mosquitoes in the Bill yard?
A. I've seen nothing written. [Union Pacific's defense counsel] told me yesterday that there were complaints of mosquitoes along the line and in the yard.
*29 Based on this information, and the case law discussed above, the issue of foreseeability constituted a material issue of fact to be determined by the jury.

Causation.
The fourth element of common-law negligence is causation. Deviney testified that she was bitten by mosquitoes while doing a required roll-by inspection of another train at East Cadaro Junction and again while at the trainyard in Bill. An infectious disease physician in Casper, Wyoming, testified by deposition that if Deviney was not bitten elsewhere, the bites at work would be the cause of her WNV. The close temporal relationship between being bitten on August 3, 2003, and the onset of Deviney's symptoms provides, on a motion for summary judgment, an inference of a causal relationship between Deviney's being bitten on August 3 and her WNV. Thus, there was a material question of fact regarding causation that should have been presented to a jury.

CONCLUSION
For the reasons stated above, we find that there were genuine issues of material fact on the four elements of Deviney's FELA claim preventing entry of judgment as a matter of law in favor of Union Pacific. We therefore reverse the decision of the district court and remand this matter for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
CASSEL, Judge, dissenting.
Because I do not believe Union Pacific Railroad Company (Union Pacific) owed Vivika A. Deviney a duty under the Federal Employers' Liability Act (FELA) to prevent her from being bitten by a mosquito carrying "West Nile" virus (WNV) in the mosquito's natural habitat, I would affirm the district court's entry of summary judgment.
Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. Knoll v. Board of Regents, 258 Neb. 1, 601 N.W.2d 757 (1999). "`A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant. A decision that, if certain facts are found to be true, a duty exists, leaves open the other questions....'" Id. at 6, 601 N.W.2d at 762, quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37 (5th ed. 1984).
FELA was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. Sinkler v. Missouri Pacific R. Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958); Chapman v. Union Pacific Railroad, 237 Neb. 617, 467 N.W.2d 388 (1991). It is highly doubtful that Congress intended FELA to cover this type of claim; acquiring WNV after being bitten by a mosquito in its natural habitat is not a danger peculiar to railroad workers. FELA does not make the employer the insurer of the safety of his employees while they are on duty; the basis of the employer's liability is negligence, not the fact that injuries occur. Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572 (1947).
Deviney states that she "never argued that [Union Pacific's] duty under the FELA was to kill every last mosquito that she might encounter while working for the railroad." Brief for appellant at 22. But Union Pacific correctly responds that "the nature of WNV dictates the opposite. It only takes one mosquito bite for a human to catch WNV." Brief for appellee at 18. Deviney herself acknowledged that the *30 town where she lived in Wyoming had mosquitoes, and she rhetorically asked, "Where doesn't?" Indeed, the very randomness of the risk involved would effectively impose strict liability upon FELA employers for a mosquito bite resulting in WNV. While the majority opinion correctly notes that a FELA employer has a duty to furnish its employees a "reasonably safe place to work," the majority's decision effectively makes the employer an insurer for a random risk beyond human control.
It is not reasonable to impose upon Union Pacific a duty to eradicate mosquitoes that may fly into the area in which an employee happens to be working. I would hold that Union Pacific was not negligent, because it did not owe Deviney a duty to prevent her from being bitten by a WNV-infected mosquito while she was working outdoors.