**Anna CURE, individually and on behalf of minor child, K.R., Plaintiff,**

**v.**

**PEDCOR MANAGEMENT CORP., and Pedcor Investments 2005–LXXXII, L.P., Defendants.**

**8:16CV154**

United States District Court, D. Nebraska.

Signed 09/21/2016

---

Jefferson Downing, Keating, Muething Law Firm, Cincinnati, OH, for Plaintiff.

Dwyer Arce, Matthew M. Enenbach, Kutak, Rock Law Firm, Omaha, NE, Nicholas B. Batter, Hawkins Construction Company, Omaha, NE, for Defendants.

## MEMORANDUM ORDER

Richard G. Kopf, Senior United States District Judge

In this diversity action, Plaintiff claims Defendants, two companies that own and manage an apartment complex in Grand Island, Nebraska, where Plaintiff resided with her minor child, were negligent in failing to prevent the kidnapping and rape of her child by another resident. Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and contend the facts alleged in Plaintiff's amended complaint do not show that the crime was reasonably foreseeable by them. For the reasons discussed below, Defendants' motion to dismiss will be denied.

## I. DISCUSSION

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint must be dismissed if it does not plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (stating that the

plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully).

For the purposes of a motion to dismiss, the court must "assume that well-pleaded factual allegations in the complaint are true and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (internal quotation marks omitted). The court will not, however, "blindly accept the legal conclusions drawn by the pleader from the facts." *Id.* "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Hawkins Constr. Co. v. Peterson Contractors, Inc.*, 970 F.Supp.2d 945, 949 (D. Neb. 2013).

While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation marks omitted). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).

### B. Applicable Nebraska Law

■ In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Pittman v. Rivera*, 293 Neb. 569, 879 N.W.2d 12, 15 (2016). The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Peterson v. Kings Gate Partners–Omaha I, L.P.*, 290 Neb. 658, 861 N.W.2d 444, 448 (2015). In this case, a legal duty arises by virtue of an alleged landlord-tenant relationship.

■ Although the Nebraska Supreme Court previously stated that "landlords are not insurers that a tenant will be protected at all times," *C.S. v. Sophir*, 220 Neb. 51, 368 N.W.2d 444, 446 (1985) (holding that landlord did not have duty to warn tenants of danger of sexual assault in parking area based on a single prior assault), this case law predates the Court's decision in *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010), and "is not helpful in the duty determination presented here." *Peterson*, 861 N.W.2d at 449. In *A.W.*, [the Nebraska Supreme Court] abandoned the risk-utility test and adopted the duty analysis set forth in the Restatement (Third) of Torts . . . ." *Latzel v. Bartek*, 288 Neb. 1, 846 N.W.2d 153, 162 (2014). Under the Restatement analysis, "[t]he question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation." *A.W.*, 784 N.W.2d at 913. "But it is for the fact finder to determine, on the facts of each individual case, whether or not the evidence establishes a breach of that duty." *Id.* "[F]oreseeable risk is an element of the determination of negligence, not legal duty." *Id.* at 917.

■ "Simply put, whether a duty exists is a *policy* decision, and a lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination." *Id.* at 916 (emphasis in original). As a matter of law, "[a]n actor in a special relationship with another owes the other a

duty of reasonable care with regard to risks that arise within the scope of the relationship." Restatement (Third) of Torts, § 40(a). One "special relationship" giving rise to such a duty is the relationship of "a landlord with its tenants." *Id.* at § 40(b)(6); *Peterson*, 861 N.W.2d at 448 (holding that plaintiff stated plausible claim for relief against landlord for failing to protect him from another resident).

 "After *A.W.*, the existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances." *Peterson*, 861 N.W.2d at 448. "In order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence." *Pittman*, 879 N.W.2d at 17. "The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable." *Id.* "Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter." *Id.*

### C. The Pleadings

 Plaintiff alleges in pertinent part:

1. Plaintiff Anna Cure is the mother and natural guardian of K.R. . . . . At all times relevant to this cause of action, Plaintiffs Anna Cure and K.R. were residents of Riverbend Apartments in Unit # 16 located at 107 Lakeview Circle in Grand Island, Nebraska 68803.

2. At all times relevant Defendant Pedcor Investments . . . was the owner of Riverbend Apartments . . . .

3. At all times relevant Defendant Pedcor Management . . . managed Riverbend Apartments . . . .

\* \* \*

6. At all times relevant to this cause of action, Maegan Jones (hereinafter "Jones") was also a resident of Riverbend Apartments and she leased Unit # 3 . . . .

7. Under her Rental Agreement . . ., Jones was listed as the only "DESIGNATED TENANT(S)" of Riverbend Apartments Unit # 3 . . . . .

8. At all times relevant to this cause of action, Abraham D. Richardson (hereinafter "Richardson") resided with Jones at Unit # 3 . . .

\* \* \*

11. On or about August 12, 2010, management of Riverbend Apartments was contacted by police regarding Richardson's presence as an occupant of Unit # 3 . . . .

12. As of and before August 12, 2010, management of Riverbend Apartments had knowledge that Richardson was residing at Unit # 3 . . . .

13. As of August 12, 2010, Richardson was being investigated for possessing and distributing child pornography and as of August 12, 2010, the management of Riverbend Apartments had knowledge that Richardson was involved in criminal activity including but not limited to possession and distribution of child pornography.

\* \* \*

15. On February 3, 2011, Special Agents with the Department of Homeland Security executed a search warrant at Unit # 3 . . . looking for evidence of child pornography. As early as February 3, 2011, management of Riverbend Apartments had knowledge that a search warrant was executed at Unit # 3 and that the search warrant concerned a Federal investigation of Richardson for possession and/or distribution of child pornography.

\* \* \*

19. That after learning of Richardson's residence at Unit #3 ..., and after learning of Richardson's criminal history and investigation for possession and distribution of child pornography, management of Riverbend Apartments took no action to remove Richardson as a resident of Unit #3 and Richardson was allowed by management to continue his residence ... until at least October 2, 2011.

20. That after learning of Richardson's residence at Unit #3 ... and after learning of Richardson's criminal history and investigation for possessing and distributing child pornography, Management of Riverbend Apartments took no action to warn other Tenants of Richardson's residence.

21. That on or about October 2, 2011, Richardson kidnapped K.R. from her home at Unit #16 of Riverbend Apartments, brutally assaulted, and raped her on the campus of Riverbend Apartments.

27. That Pedcor Management conducted, or in the exercise of reasonable care should have conducted, background checks on all prospective Tenants, and that Pedcor Management did not conduct a background check on Richardson, nor did they take reasonable steps to make Richardson a lawful tenant or have him removed as a resident of their apartments.

28. If management had conducted a background check on Richardson, same would have demonstrated Richardson to have the following criminal history prior to the 10/2/11 assault in this case:

a. Public indecency—Class 2 Misdemeanor; County Court of Hall County, Nebraska, Case No. CR 02–0004257; offense date 9/28/2002 (dismissed by Prosecutor);

b. Public indecency—Class 2 Misdemeanor; County Court of Hall Coun-

ty, Nebraska, Case No. CR 07–0002977; offense date 7/8/2007 (guilty plea);

c. Assault—3rd Degree—Class 1 Misdemeanor; County Court of Hall County, Nebraska, Case No. CR 08–0004580; offense date 7/18/2008 (guilty);

d. Assault—3rd Degree—Class 1 Misdemeanor; County Court of Hall County, Nebraska, Case No. CR 09–0004010; offense date 10/15/2009 (dismissed by Prosecutor).

\* \* \*

31. Prior to October 2, 2011, Plaintiff Anna Cure reported to management of Riverbend Apartments that she had lost a key to her apartment and Plaintiff Anna Cure requested that her locks be changed on her apartment.

32. Management of Riverbend Apartments claimed to have replaced the lock, but never actually replaced the lock on Plaintiff Anna Cure's apartment, as Plaintiff Anna Cure's original key still worked after she was advised by management that her lock had been changed.

\* \* \*

46. Defendant Pedcor Investments ... and Defendant Pedcor Management ... were negligent in the following respects:

a. Failing to remove Richardson from the Riverbend Apartment premises;

b. Failing to perform a criminal background check on Richardson;

c. Failing to warn the tenants of Riverbend Apartments about, or otherwise protect the tenants from the foreseeable actions of Richardson, including the October 2, 2011 assault of K.R.; and [sic]

d. Failing to provide a safe premises for the tenants of Riverbend Apartments; and

e. Failing to properly change the lock on Plaintiffs' apartment.

(Filing No. 11 at CM/ECF pp. 1–7.)

### D. Defendants' Motion to Dismiss

In support of their argument that Plaintiff's amended complaint fails to state a claim upon which relief can be granted, Defendants rely on the Nebraska Supreme Court's recent decision in *Pittman*, in which the Court affirmed a grant of summary judgment in a case where the plaintiff ("Pittman") was struck by a vehicle while standing in or near a parking lot owned and maintained by the defendant ("2nd Street"), a drinking establishment. The driver of the vehicle ("Rivera") was another patron who had been forcibly removed from 2nd Street earlier in the evening by one of defendant's employees ("Hubbard") after getting into a physical altercation with his girlfriend ("Snyder"). Rivera was aggressive and assaultive toward Hubbard, but he ultimately got into a vehicle with friends and was driven away by a designated driver. Hubbard considered the incident "handled" and did not contact police. Rivera returned about an hour later, as the bar was closing, but Hubbard did not allow him inside. When Rivera became aggressive, Hubbard again escorted him to the parking lot, where he got into his vehicle. Rivera drove away, but then performed a U-turn on the street and raced toward a group of people, including Pittman, who were standing outside the bar. Another of the defendant's employees yelled at Pittman to get out of the way, but he did not react quickly enough to avoid being struck. Rivera was later convicted of and sentenced to prison for first degree assault and leaving the scene of an accident.

■ The Nebraska Supreme Court held in *Pittman* that the defendant, as a business proprietor, owed the plaintiff a duty of reasonable care,[1] but that the driver's conduct in running down the plaintiff with his vehicle was not a foreseeable risk. The Court explained:

In order to make a risk of attack foreseeable, the circumstances to be considered must have a direct relationship to the harm incurred. Rivera's prior conduct at the bar that night (i.e., assaultive and threatening behavior toward Snyder and Hubbard) was completely different in nature from his later actions that harmed Pittman. There was no evidence that Rivera knew Pittman, that he had any reason to assault Pittman, or that he would intentionally try to run over a person outside the bar. Hubbard, as an employee of 2nd Street, had promptly removed Rivera from the premises upon observing his assaultive behavior and had observed him leaving the scene with a designated driver.

---

1. The duty a business proprietor owes to protect its patrons from third parties has been articulated by the Nebraska Supreme Court as follows:

The modern general rule, summarized in its simplest terms, is that the proprietor of a place of business who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the premises for such a purpose for bodily harm caused to them by the accidental, negligent, or intentionally harmful acts of third persons, if the proprietor by the exercise of reasonable care could have discovered that such acts were being done or were about to be done, and could have protected the members of the public by controlling the conduct of the third persons or by giving a warning adequate to enable them to avoid harm.

*Pittman*, 879 N.W.2d at 16 (quoting *Schroer v. Synowiecki*, 231 Neb. 168, 435 N.W.2d 875, 879 (1989) (emphasis omitted)).

When Rivera returned to the premises and Hubbard discovered that he was driving a vehicle, it was not reasonably foreseeable that Rivera would use his vehicle to assault Pittman.

879 N.W.2d at 17.

Defendants compare the present case to *Pittman*, stating that "the alleged misdemeanor assault [charges in 2008 and 2009], misdemeanor public indecency [charges in 2002 and 2007], and investigation [by authorities during 2010 and 2011 into Richardson's suspected possession and distribution] of child pornography are clearly 'completely different in nature' from the kidnapping and sexual assault of another tenant of Pedcor's property" (Filing No. 16 at CM/ECF p. 9). *Pittman*, of course, was decided on a motion for summary judgment, and the Nebraska Supreme Court concluded that Rivera's assaults on his girlfriend and the bouncer who came to her aid were "completely different in nature" from his subsequent assault against Pittman because "[t]here was no evidence that Rivera knew Pittman, that he had any reason to assault Pittman, or that he would intentionally try to run over a person outside the bar." *Id.* By contrast, in the present case, which is still at the pleading stage, it is not implausible that Defendants, simply knowing that Richardson was being investigated for possessing and distributing child pornography, should have realized he posed a risk of injury to children residing in the apartment complex.

The present case more closely resembles *Peterson*, in which the Nebraska Supreme Court reversed a district court's decision to grant a motion to dismiss. In that case, the plaintiff ("Peterson") filed suit against his landlord ("Kings Gate") for injuries he received following an assault by Floyd Wallace on Kings Gate's premises.

[The] complaint alleged that Peterson and Wallace's mother were both residents of Kings Gate senior apartment homes in Omaha, Nebraska. According to the complaint, Peterson and Wallace's mother lived across the hall from each other. According to the complaint, despite lease provisions prohibiting it, Wallace resided with his mother in her apartment. On or about December 8, 2012, Wallace's mother was notified that due to Wallace's residing in her apartment, she was in violation of her lease.[2] On December 17, Wallace assaulted Peterson in Peterson's apartment. Peterson alleged in his complaint that Kings Gate conducted a background check on Wallace. After the assault occurred, Peterson was informed on one occasion that the background check did not reveal any felony convictions, and he was informed on another occasion that drug-related felony convictions were found. Peterson further alleges that, in fact, Wallace had several convictions for crimes of violence, including assault and battery in 2000; violation of a protection order for verbally assaulting a mentally challenged woman via telephone in 2002; and abuse of a vulnerable adult in 2004.

Peterson alleged that Kings Gate was negligent in failing to (1) exercise reasonable care in performing a criminal background check on Wallace, (2) exclude Wallace from the Kings Gate senior apartment homes premises, (3) warn tenants about or otherwise protect tenants from Wallace, and (4) provide safe premises for tenants.

---

2. In the present case, Maegan Jones allegedly violated her lease by permitting Richardson to reside with her without Defendants' approval, but this fact does not appear material to the question of foreseeability.

861 N.W.2d at 446–47. In reversing the district court's decision, the Supreme Court stated:

> At this stage in the proceedings, we conclude that Peterson has stated a claim for relief that is plausible on its face and therefore survives a motion to dismiss. Kings Gate did owe a duty under § 40 of the Restatement; it remains for the finder of fact to determine whether Kings Gate breached that duty.

*Id.* at 447.[3]

## II. CONCLUSION

Defendants had a duty to protect their residents against foreseeable risks of harm within the apartment complex. Plaintiff's amended complaint contains sufficient facts to make a plausible case for holding Defendants liable for negligently failing to prevent the kidnapping and rape of Plaintiff's minor child by another resident.

Accordingly,

IT IS ORDERED that Defendants' motion to dismiss (Filing No. 14) is denied.

---

**3.** Plaintiff also compares her case to *K.S.R. v. Novak & Sons, Inc.,* 225 Neb. 498, 406 N.W.2d 636 (1987), *overruled on other grounds by Knoll v. Bd. of Regents of Univ. of Nebraska,* 258 Neb. 1, 601 N.W.2d 757 (1999), in which a tenant brought an action against her landlord for failing to repair the lock on her front door, which allegedly resulted in the tenant being sexually assaulted in her apartment. The Nebraska Supreme Court reversed the entry of summary judgment in favor the landlord because the Court was "unable to state as a matter of law that the assault … was not reasonably foreseeable." *Id.* at 639. The present case is distinguishable because although Plaintiff alleges she informed Defendants she had lost her key and requested that the lock be changed, there is no allegation that Richardson gained access to Plaintiff's apartment by using the lost key.